MARY A. KNOWLES *vs.* GEORGE TOOTHAKER.

*Deed—construction of.*

When a line described in a deed as running from a given point, is soon after-
wards located and marked upon the face of the earth by the parties, and there-
afterwards the line thus established is recognized and treated by them as the
true line, it is conclusive upon the parties and their assigns, although it be
subsequently ascertained that it varies from the one given in the deed.

Thus, Henry Smith conveyed to the defendant so much of his land as lay north
of a line extending from a given point easterly, and " parallel with the north
line of lot No. 9, to the county road," and thereupon, after causing the line to
be surveyed, and marked on the face of the earth by stakes and stones and
spotted trees, they built thereon a fence, intending it as the division fence, and
respectively occupied thereto for six years, when Smith conveyed his remain-
ing land to the plaintiff's grantor, running " to land supposed to be owned
by " the defendant, " thence easterly on said " defendant's " south line to the
county road;" *Held,* that the clause, " thence easterly on the said defendant's
south line," limited the plaintiff's land to the fence, although the real line, as
given in the deed, lay some rods north of the fence.

ON REPORT.
WRIT OF ENTRY.
CASE is fully stated in the opinion.

*S. Belcher,* for the plaintiff, cited *Wiswell* v. *Marston,* 54 Maine,
270.

*P. M. & P. H. Stubbs,* for the defendant.

DICKERSON, J.    WRIT OF ENTRY.    Both parties claim title
through the same grantor, Henry Smith, who, in the first instance,
conveyed "parts of lots numbered 9 and 10, on the east side of
Sandy river," to the defendant.   After reciting the other bounda-
ries, the description in the deed continues as follows, " thence east-
erly by a line parallel with the north line of lot No. 9 to the
county road," the grantee taking the land north of the line now in
dispute, and the grantor retaining the land south of it.   The line

was run and marked by a surveyor immediately after the conveyance, and the parties then built a fence on it, intending it for a division fence, Smith occupying to the fence on the south, and the defendant on the north side of the fence, for some six years, when Smith conveyed his remaining parcel to the plaintiff's grantor, describing the line in controversy as follows, "to land supposed to be owned by George Toothaker, thence easterly on said Toothaker's south line to the county road." About eight months afterwards, the grantee conveyed the last named premises to the plaintiff, describing it as "the same she purchased of Henry Smith." The plaintiff claims to hold to the line described as running "easterly by a line parallel with the north line of said lot No. 9 to the county road," in Smith's deed to the defendant, which is several rods northerly of the fence, and the defendant claims to hold to the divisional line made by the fence; and the question is, which is the true line between the parties?

The presiding judge ruled that the words, "on said Toothaker's south line," would limit the plaintiff's land to the line established by Toothaker and Smith, on which the division fence was built, and that she could not hold beyond this line, even if she could satisfy the jury that it did not conform to the original lot line; thereupon the parties agreed to submit the question to the law court, judgment to be rendered for the defendant if the ruling is correct; if not, the action is to stand for trial.

But for the acts of the parties in interest, in running, marking, and locating the line, building a fence upon it immediately after the conveyance, and occupying up to it down to the commencement of this suit, the line on the course described in the deed, if it could be ascertained, would be the line between the two parcels. Did these acts fix and establish the divisional line as the true line?

It was early held that where a deed refers to a monument, not actually existing at the time, but which is subsequently placed there by the parties for the purpose of conforming to the deed, the monument so placed will govern the extent of the land, though it does not entirely coincide with the line described in the deed. *Make-*

*peace* v. *Bancroft*, 12 Mass. 469 (1815) ; *Kennebec Purchase* v. *Tiffany*, 1 Greenl. 211 (1821) ; *Lerned* v. *Morrill*, 2 N. H. 197 (1820).

Again it was held in *Moody* v. *Nichols*, 16 Maine, 23 (1839), that when parties agree upon a boundary line, and hold possession in accordance with it, so as to give title by disseisin, such boundary will not be disturbed, although found to have been erroneously established. In that case the call in the deed was " a line extended west, so as to include " a certain number of acres, the boundaries upon the other three sides having been accurately described. The parties to the deed agreed upon and marked that line, erected a fence upon it, and held possession according to it for thirty years.

The same doctrine was held by the supreme court of the United States, in giving construction to a line described in the deed as " running a due east course " from a given point. *Missouri* v. *Iowa*, 6 How. 660.

So the court in Massachusetts, in giving effect to a deed, describing a line as " running a due west course " from a given point, held that the line located, laid out, assented to, and adopted by the parties, was the true line, though it varied several degrees from " a due west course." *Kellog* v. *Smith*, 7 Cush. 382 (1851).

In *Emery* v. *Fowler*, 38 Maine, 102 (1854), the call in the deed was a line from a given point, " on such a course . . . as shall contain exactly one and a half acres." The lots to be conveyed were located upon the face of the earth by fixed monuments, erected by referees mutually agreed upon ; and the parties to the several conveyances assented to and adopted the location before the deeds were given. Deeds intended to conform to the location thus made were then executed by the parties. The respective grantees entered under the deeds, built fences, and occupied in conformity with the location for fifteen years, when, it being found that more land was contained within the limits of the actual location upon the face of the earth than was embraced within the calls of the deed, a dispute arose. The court held that the monuments thus erected before the deed was given, must control, thus extending the rule adopted in

*Moody* v. *Nichols* to cases where the possession had not been long enough to give title by disseisin. That decision also makes the rule of construction the same, whether the location is first marked and established, and the deed is subsequently executed, intended to conform to such location, or whether monuments, not existing at the time, but referred to in the deed, are subsequently erected by the parties with like intention.

In construing a deed, the first inquiry is, what was the intention of the parties? This is to be ascertained primarily from the language of the deed. If this description is so clear, unambiguous, and certain, that it may be readily traced upon the face of the earth from the monuments mentioned, it must govern; but when, from the courses, distances, or quantity of land given in a deed, it is uncertain precisely where a particular line is located upon the face of the earth, the contemporaneous acts of the parties in anticipation of a deed to be made in conformity therewith, or in delineating and establishing a line given in a deed, are admissible to show what land was intended to be embraced in the deed. It is the tendency of recent decisions to give increased weight to such acts, both on the ground that they are the direct index of the intention of the parties in such cases, and, on the score of public policy, to quiet titles. The ordinary variation of the compass, local attraction, imperfection of the instruments used in surveying, or unskillfulness in their use, inequalities of surface, and various other causes, oftentimes render it impracticable to trace the course in a deed with entire accuracy. If to these considerations we add, what is too often apparent, the ignorance or carelessness of the scrivener in expressing the meaning of the parties, we shall find that the acts of the parties in running, marking, and locating a line, building a fence upon it, and occupying up to it, are more likely to disclose their intention as to where the line was intended to be, when the deed was given, than the course put down on paper, if there is a conflict between the two.

. Hence the rule of law now is, that when, in a deed or grant, a line is described as running from a given point, and this line is

afterwards run out and located, and marked upon the face of the earth by the parties in interest, and is afterwards recognized and acted on as the true line, the line thus actually marked out and acted on is conclusive, and must be adhered to, though it may be subsequently ascertained that it varies from the course given in the deed or grant.

The acts of the defendant and Smith, through whom the plaintiff claims, in surveying and marking the line in dispute upon the face of the earth by stakes and stones and spotted trees, building a fence thereon, intending it to be the line between them, and occupying up to it, make and establish such line as the divisional line between the two lots.

The ruling of the presiding judge was in accordance with this construction of the deeds, and there must be

*Judgment for defendant.*

Appleton, C. J.; Cutting, Kent, Barrows, and Danforth, JJ., concurred.