Roland PERREAULT and Juliette
Perreault

v.

Roland TOUSSAINT and Emelda
Toussaint.

Roland TOUSSAINT and Emelda
Toussaint

v.

Roland PERREAULT and Juliette
Perreault.

Supreme Judicial Court of Maine.

Argued Jan. 3, 1980.

Decided Aug. 22, 1980.

See also Me., 388 A.2d 918.

Marshall, Raymond, Beliveau, Dionne & Bonneau, Paul R. Dionne (orally), Lewiston, for Roland and Amelda Toussaint.

Solman, Page & Hunter, Robert H. Page (orally), Richard N. Solman, Caribou, for Roland and Juliette Perreault.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

NICHOLS, Justice.

Roland and Emelda Toussaint are the owners of a parcel of land in Eagle Lake, Maine. Roland and Juliette Perreault are the owners of an abutting parcel. In 1974 and 1975 each couple initiated an action against the other couple in Superior Court (Aroostook County) seeking damages for trespass and also seeking removal of a cloud on title.[1]

---

1. The parties have neglected to obtain an appropriate order of consolidation for trial of the two actions pursuant to M.R.Civ.P. 42(a).

After a bench trial, the Superior Court made interlocutory findings as to the location of boundaries only. Upon motion, the case was reported to the Law Court pursuant to M.R.Civ.P. 72(c). The Law Court discharged the report as improvidently brought and remanded to Superior Court for further proceedings. *Toussaint v. Perreault*, Me., 388 A.2d 918 (1978).

After a further hearing, the Superior Court declared title in the Toussaints in accordance with the interlocutory order and assessed damages in the amount of $100 against Juliette Perreault. Roland Perreault died during the course of the action. A motion to substitute a party, without naming the substitute, was denied by the Superior Court.

An appeal by Juliette Perreault to this Court challenges the trial court's construction of deeds to establish the boundaries.

We sustain her appeal.

The facts pertinent to this appeal are as follows:

At one time Roland Toussaint and Emelda Toussaint owned a block of land including the parcel now in dispute. (A plan of the parcel appears as an appendix to this opinion.) In 1966, the Toussaints conveyed a parcel to Richard A. Schulz and Carol L. Schulz. The Toussaints retained and still own the land surrounding the parcel on the North, East, and South. Eagle lake forms the western boundary of the parcel. The deed from the Toussaints to the Schulzes described the parcel as follows:

Lot No. forty–four (44) on the northerly shore of Eagle Lake in that row of lots which extends in a westerly direction along the said shore of Eagle Lake from the east line of the town of Eagle Lake where it intersects the said shore of Eagle Lake and having the following bounds, to wit: Beginning at the south-west corner of Lot No. 43, at low water mark, thence N 75° E a distance of two hundred (200) feet: thence in a westerly direction, along the southerly bound of

land of grantors, a distance of five hundred (500) feet to a stake; thence S 76° W a distance of two hundred (200) feet, to the said shore of Eagle Lake, a low water mark; thence in an easterly direction along the shore of Eagle Lake to the point of beginning.

In 1973, the Schulzes conveyed the parcel to Roland Perreault and Juliette Perreault in joint tenancy. That deed described the land as follows:

Lot No. forty–four (44) on the easterly shore of Eagle Lake in that row of lots which extends in a westerly and northerly direction along the said shore of Eagle Lake from the East line of the Town of Eagle Lake where it intersects the said shore of Eagle Lake, the said lots formerly being land owned by Roland and Emelda Toussaint and the survey of said lots having been done by one Joseph Nadeau, the said lot No. 44 being hereby conveyed being described as follows, to wit: Beginning at the northwest corner of Lot No. 43, at low water mark, thence N 75° E a distance of two hundred (200) feet; thence in a northerly direction, along the westerly bound of land of said Roland and Emelda Toussaint, a distance of five hundred (500) feet to a stake thence S 76° W a distance of two hundred (200) feet, to the said shore of Eagle Lake, at low water mark; thence in a southerly direction, along the shore of Eagle Lake, to the point of beginning.

The parties agree that these different descriptions were intended to describe the same parcel. The trial court's task was to interpret the deeds to determine what the boundaries are.

The major dispute was the determination of the southern boundary line.[2] The western terminus of this boundary determines the amount of lake frontage owned by the respective parties. That western terminus is also the starting point of the calls in the deed.

2. We refer to the boundaries in terms of the true orientation of the land on the face of the earth.

The deeds do not adequately identify the location of the starting point. Both deeds specify "the . . . corner of lot 43" to be the western terminus and specify the eastern terminus to be two hundred (200) feet from that point along a North 75° East course. However, because the deeds do not indicate the location of lot 43, neither terminus of the southern boundary line can be identified. The trial court admitted extrinsic evidence to clarify the ambiguity in the deed. At trial Roland Toussaint, Roland Perreault and Richard A. Schulz were in agreement that the iron pin identified on T. R. Brown's plan as point "B" is the eastern terminus of the southern boundary. Therefore, the trial court then had only to determine the western terminus. The trial court found the stake identified as "C–1" on the plan to be the western terminus. That was error. This finding by the trial court was based upon Roland Toussaint's testimony in court and his prior statements as recounted by witnesses who took the stand that "C–1" was the starting point. The trial court also relied upon a surveyor's field notes from a 1965 survey which was commissioned by Toussaint. Though both deeds indicate a bearing of North 75° East, the field notes indicate that the bearing of the southern boundary is South 75° East. That bearing is approximately the bearing between "C–1" and the iron pin, identified as "B" on the plan, which is the agreed upon eastern terminus. The trial court then determined the remaining boundaries and ordered Juliette Perreault to pay $100 in damages.

■ We review the determination of the starting point as a matter of law because the issue of what the boundaries are is a question of law. *Hathaway v. Rancourt*, Me., 409 A.2d 209, 213 (1979); *Kinney v. Central Maine Power Co.*, Me., 403 A.2d 346, 350 (1979); *C Company v. City of Westbrook*, Me., 269 A.2d 307, 309 (1970).

■ Where the specifications in the deeds were insufficient to locate the boundaries of the parcel, the trial court properly admitted extrinsic evidence. *Hathaway v. Rancourt, supra* at 213. Thus, the testimony of three witnesses as to the iron pin

identified as "B" was properly admitted to establish the eastern terminus of the southern boundary. However, once that intermediate point in the description of the parcel was established, no further extrinsic evidence was necessary because thereafter the calls in the deeds were adequate to determine all the boundaries. The deeds describe the southern boundary as two hundred (200) feet along a North 75° East course beginning at the western terminus. Knowing the eastern terminus enables determination of the boundary by starting at the iron pin identified as "B" and proceeding along the course which is the reciprocal of North 75° East, or South 75° West, back to the starting point. Accordingly, the western terminus is the point at which a line starting at "B" and running South 75° West intersects the low water mark of Eagle Lake. The trial court's error was in locating that point on the basis of extrinsic evidence substantially at variance with the deeds.

■ Neither party requested reformation of the deeds. Had reformation been sought, extrinsic evidence might appropriately have been used. Where the action does not seek reformation, the trial court must apply the rules for construction of deeds, without permitting extrinsic evidence to contradict the intention manifested in the deed. *Hedberg v. Wallingford*, Me., 379 A.2d 126, 131 (1977); *May v. Labbe*, 114 Me. 374, 379, 96 A. 502, 504 (1916).

■ The trial court's determination of the remaining boundaries accords with the deeds and properly relies upon extrinsic evidence where necessary. The deeds describe the eastern boundary as five hundred (500) feet in a northerly direction. Lacking a specific bearing, the trial court drew upon extrinsic evidence indicating that the eastern boundary is parallel to the lakeshore. The evidence revealed that Toussaint and Schulz bargained for conveyance of lakeside lots of uniform width and length. The eastern boundary best satisfying that expectation is the line fixed by the trial court. The trial court fixed the northern boundary

as proceeding South 76° West two hundred (200) feet to the lake, exactly as the deeds specify. Also consistent with the deeds is the western boundary, established by the trial court as following the lakeshore to the starting point. Our fixing the starting point at the point described above extends the western boundary to that starting point.

Our redetermination of the boundaries requires us to remand the case to Superior Court for a new trial on the issue of damages only. When judgment is entered thereon the judgment should also quiet Juliette Perreault's title to premises described as follows:

Beginning at a point at the low water mark of Eagle Lake which point is a continuation of a line South 75° West from an iron pin placed by T. R. Brown, Land Surveyor, in 1973 and identified as "B" on his plan of the subject premises; thence North 75° East two hundred (200) feet, more or less, to the said iron pin identified as "B";

thence northerly and parallel to the shore of Eagle Lake at its low water mark five hundred (500) feet, more or less, to a stake placed by the said T. R. Brown; thence South 76° West one hundred and seventy–nine (179) feet to a stake placed by the said T. R. Brown near the shore of Eagle Lake; thence continuing the same course to the low water mark of Eagle Lake;

thence southerly following the shore of Eagle Lake at the low water mark to the point of beginning.

The entry in each of the two cases, will, therefore, be:

Appeal sustained.

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

APPENDIX

All concurring.