Garth L. SLIPP, et al.

v.

George STOVER, et al.

Supreme Judicial Court of Maine.

Argued Oct. 4, 1994.

Decided Dec. 16, 1994.

---

Roger A. Therriault (orally), Bath, for plaintiffs.

John F. Shepard, Jr. (orally), Shepard & Shepard, Freeport, for defendants.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

George and Karen Stover appeal from a judgment entered in the Superior Court ordering the reformation of a deed after a nonjury trial (Cumberland County, *Brodrick, J.*). They also appeal the trial court's denial of their counterclaims for attorney fees and costs, rescission and declaratory relief as to the location of a boundary line. We affirm the judgment.

Garth and Priscilla Slipp deeded a portion of their Flying Point Road property in Freeport to their daughter, Cheryl Smith, and her husband, Ronald, on February 17, 1976. Prior to executing the deed, Ronald Smith and Garth Slipp walked and marked the intended Smith lot with then apprentice surveyor John T. Mann. They designed the lot with a short jog south for approximately 50 feet to provide the Smiths with a reasonable clearance between their house, which was under construction, and the boundary line with the Slipps.

There was a spruce tree at the end of the 50–foot jog. Mann blazed the tree in three spots to mark the southerly boundary of the jog. From the tree, the three men turned easterly and plotted a straight line to the back end of the Smith lot adjacent to the land of Curtis. Roughly contemporaneous with this survey, Mann or Smith or both of them sank one iron pin at the base of the spruce tree and another iron pin at the northerly end of the 50–foot jog. Mann's sketch of the intended Smith lot included the compass bearings, distances and the two iron pins that were to serve as monuments for the 50–foot jog.

Until 1987, the Slipps and the Smiths treated the border marked by the spruce tree and the corresponding iron pins as the actual border between the two properties. Smith grew his lawn within the 50–foot jog as marked by the spruce tree and erected a basketball hoop next to the northerly iron pin.

On November 18, 1987, the Slipps sold the remaining portion of their original Flying Point property to George Stover and Karen Dubay (now Stover). The conveyance was by a deed by exception (hereafter, Stover deed), i.e., the deed excepted from the Slipp to Stover grant the 1976 deed from the Slipps to the Smiths.

Prior to their acquisition of the Slipp property, the Stovers could not locate their boundary with the Smiths by their deed alone because it was a deed by exception. After closing, Stover obtained a survey based on the description contained in the Slipp to Smith deed. The survey depicted the boundary between the Stover and Smith parcels as considerably closer to the Smith house than the Slipps and Smiths had intended. A large portion of the Smith lawn and basketball hoop were on the Stovers' land according to the survey. Stover made some improvements to the area and began using portions of it for storage.

The Smiths thereafter discovered that the iron pins, which were to serve as the monuments for the 50–foot jog, had been mistakenly excluded from the deed description of the Smith lot by the attorney who drafted the description. They also found that Mann's compass bearings describing the southerly boundary of the Smith property were slightly inaccurate. Because of this inaccuracy in the deed description from Slipp to Smith, and because the deed makes no reference to the iron pins, the survey obtained by the Stovers did not reflect the intentions of the Smiths and Slipps. (The attachment appended hereto shows the area in dispute).

The Slipps and Smiths then brought this suit for reformation of the Smith deed.[1] The Stovers filed an answer and counterclaim for attorney fees, rescission and for declaratory relief as to the location of the common

boundary line. After a nonjury trial, judgment was entered for the plaintiffs on their complaint and the defendants' counterclaim.

The Stovers filed a motion to amend pursuant to M.R.Civ.P. 59 and a motion for findings of fact pursuant to M.R.Civ.P. 52 on October 18, 1993. Both motions were denied after a hearing on April 7, 1994.

### Latent Ambiguity

■ The doctrine of latent ambiguity is central to this case. "A latent ambiguity in a deed is created when, in applying the description to the ground, facts extrinsic to the document *controvert or in some way render unclear* the deed's apparently unambiguous terms." *Taylor v. Hanson*, 541 A.2d 155, 157 (Me.1988) (emphasis added). In *Taylor*, extrinsic evidence that two roads denominated as parallel in a deed were not, in fact, parallel, was admitted to reveal the latent ambiguity. *See also Tyler v. Fickett*, 73 Me. 410 (1882) (latent ambiguity developed from inability to locate road to which deed referred); *Kratzer v. Kratzer*, 595 S.W.2d 453, 455 (Mo. App.1980) (deed conveying land to "Erwin J. Kratzer" instead of "Erwin K. Kratzer" due to scrivener's error created latent ambiguity). A latent ambiguity is "an uncertainty which does not appear on the face of the instrument, but which is shown to exist for the first time by matter outside the writing when an attempt is made to apply the language to the ground." 23 AM.JUR.2D § 314 *Deeds* (1983). Extrinsic evidence may be admitted to reveal a latent ambiguity in an otherwise clear and unambiguous deed.[2] *Taylor*, 541 A.2d at 157.

■ In the instant case, extrinsic evidence reveals that the boundary which the original parties (Slipp and Smith) intended is not the boundary described in the Smith deed. The

---

1. The complaint for reformation of deed filed by plaintiffs requests "that the deed from Slipp to Smith and the deed from Slipp to Stover/Dubay be reformed to reflect the actual intended location of the joint property line between the Smith and Stover/Dubay properties." In point of fact, only the Slipp to Smith deed need be reformed since the Slipp to Stover/Dubay deed is a deed by exception.

2. The Stovers are mistaken in relying on *Perreault v. Toussaint*, 419 A.2d 1009 (Me.1980), for the proposition that "[n]o extrinsic evidence may be admitted which is at odds with the deeds." *Perreault* clearly stated that "[n]either party requested reformation of the deeds. Had reformation been sought, extrinsic evidence might appropriately have been used." *Perreault*, 419 A.2d at 1011.

locations of the basketball hoop, the Smiths' lawn and the blazed spruce tree, all of which served as physical manifestations of their intent, constitute such extrinsic evidence. The Smith deed thus contains a latent ambiguity which can be corrected by reformation.

The Stovers argue that the Smith deed may not be reformed because they are subsequent bona fide purchasers for value without notice. Whether reformation was properly granted is a question of fact. "The standard applicable to reformation cases is that the decision of a trial judge ... will not be overturned on appeal if it is supported by competent evidence and is not manifestly unjust or plainly and palpably erroneous." *Powell v. Evans,* 496 So.2d 723, 726 (Ala. 1986). *See also Nolan v. Stuebner,* 429 N.W.2d 918 (Minn.App.1988); 76 C.J.S. § 86 *Reformation of Instruments* (1994); 66 AM. JUR.2D § 130 *Reformation of Instruments* (1973).

■ The trial court specifically found that the Stovers had "some" actual notice of the true boundary and constructive notice of the missing pins.[3] Thus, this action may properly be viewed as one between the Smiths and the Slipps, the original parties to the deed. "[W]hen a purchaser has knowledge of the mistake, and of the true intent and design of the deed, at the time of his purchase, he will stand in no better condition than the original parties to the instrument." *Perron v. Lebel,* 256 A.2d 663, 665 (Me.1969) (quoting *Adams v. Stevens,* 49 Me. 362, 365 (1861)) (citation omitted).

Both of the original parties agree that a mistake occurred and seek reformation to correct it. "Where all parties seek reformation or if defendant admits the mistake, reformation is properly granted." 76 C.J.S. *Reformation of Instruments* § 23 (1994).

The court's specific reliance on *Knowles v. Toothaker,* 58 Me. 172 (1870), is appropriate. The *Knowles* Court declared the rule of law to be:

when, in a deed or grant, a line is described as running from a given point, and this line is afterwards run out and located, and marked on the face of the earth by the parties in interest, and is afterwards recognized and acted on as the true line, the line thus actually marked out and acted on is conclusive, and must be adhered to, though it may be subsequently ascertained that it varies from the course given in the deed or grant.

*Knowles v. Toothaker,* 58 Me. at 175–76. The trial court noted that "*Knowles* is particularly appropriate law because it is based on recognition of the fact that compasses vary, surveying instruments can be imperfect and if they are perfect, then surveyors can be imperfect and to compound the problem, scriveners can be imperfect."

Although in *Knowles* the parties' intent was manifested by the placement of a fence along the boundary line, the intent here is evidenced by the blazing of a tree and the placement of a basketball hoop, lawn and pins. The court did not err in reforming the deed.

### The Statute of Frauds

■ The Stovers argue that the statute of frauds, 33 M.R.S.A. § 51 (1988),[4] prohibits

---

**3.** The trial court found that prior to closing, Smith pointed out to Stover the basketball hoop and the spruce tree 50 feet south of the hoop which served as the boundaries of the 50–foot jog. In addition, the location of Smith's lawn would have served as an indication of the land claimed by Smith. The court also found that Stover saw the sketch on the back of the real estate agency listing showing iron pins marking the location of the 50–foot jog. Stover had been informed before closing that he would need title insurance due to missing pins. The court further found that Stover knew, or would have known if he had the land surveyed prior to closing, that if the pins still existed or their prior location was ascertainable, they would control compass bearings and distance. Finally, prior to closing, Stover reviewed a sketch provided by Slipp clearly showing iron pins marking the 50–foot jog.

Having failed to furnish us with a transcript, the Stovers cannot challenge the trial court's findings of fact on the issue of notice. Instead, they argue, as a matter of law, that notice may only derive from the Registry of Deeds. This contention entirely ignores the Slipps' and Smith's latent ambiguity argument.

**4.** 33 M.R.S.A. § 51 states in pertinent part:

No action shall be maintained in any of the following cases ... (4) Contract for the sale of land. Upon any contract for the sale of lands,

reformation of the Slipp to Stover deed. They characterize the reformed deed as transferring the disputed portion of land in violation of the statute. This argument is unpersuasive.

The statute of frauds provision on which the Stovers rely specifically addresses contracts for the sale of land. The instant case involves a deed, not a contract for the sale of land. By its own terms, the statute does not apply.

The Stovers cite language from *Lebel* that appears on its face to support the notion that the statute of frauds may nevertheless act as a bar to reformation of a deed when land has mistakenly been excluded from a deed description. *Lebel*, however, involves a contract for the sale of land, not a deed. The language which the Stovers cite from *Lebel* is dicta and comes from a Massachusetts case.[5]

The doctrine of reformation is routinely used to mold a writing to the parties' intent, even when it means adding land not previously encompassed by the document. *See,*

e.g., *Zabolotny v. Fedorenko*, 315 N.W.2d 668 (N.D.1982) (reformation granted where parties intended to include land mistakenly excluded from deed description). "Where a deed is intended to carry into execution a written or oral agreement, but fails to express the manifest intention of the parties on account of a mistake of the draftsman, whether from carelessness, forgetfulness or lack of skill, equity will rectify the mistake to make the deed express the real intention of the parties." *Hoffman v. Chapman*, 182 Md. 208, 34 A.2d 438, 441 (1943).

The statute of frauds does not bar reformation in this case. To hold otherwise would ignore existing law and the well-settled rule that deeds must be construed to give effect to the intent of the parties.

The entry is:

Judgment affirmed.

All concurring.

---

tenements or hereditaments, or of any interest in or concerning them; ... unless the promise, contract or agreement on which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith. ...

**5.** *Lebel* states:
the grantor who has used too extensive language should have a reconveyance to set his title right on the face of the instrument; for, as things stand, a purchaser without notice could

hold him to the words which he has used. *Cross v. Bean*, 81 Me. 525, 17 A. 710 (1889); *O'Donnell v. Clinton*, 145 Mass. 461, 463, 14 N.E. 747 (1888). *If a purchaser were attempting to insert a parcel left out under similar circumstances, he would be met by the statute of fraud.* But there is no such difficulty here. *Glass v. Hulbert*, 102 Mass. 24, 35.
*Perron v. Lebel*, 256 A.2d at 666 (quoting *Goode v. Riley*, 153 Mass. 585, 28 N.E. 228, 229 (1891) (*Holmes, J.*)) (emphasis added).