STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-21-103

CAROL DETINE *et al*

v.                                                    ORDER

MARIUSZ JANKOWSKI *et al*


This case involves a dispute between owners of the three condominium units that make up the Carriage House Condominiums. The Plaintiffs Carol DeTine and Roger Woodman (collectively "Plaintiffs") occupy a single unit, the Defendants Mariusz and Judyta Jankowski occupy a second unit and Defendant Hawes occupies the third unit (collectively "Defendants"). Defendant Carriage House Owners Association ("Association") is the condominium association for the condominium.

The Association is made up of three directors, one elected from each unit. Defendant Mariusz Jankowsi has been the director elected from unit three and Defendant Hawes is been the director elected from her respective unit. Plaintiff Carol DeTine, Woodman's co occupant, is the Director from unit two. The Association's bylaws require the presence of all three directors to constitute a quorum. Since Plaintiff DeTine's election as director for unit two, she has refused to attend. Therefore, the Association has held no meetings at which a sufficient quorum has been present to conduct Association business.

The Association's duties include maintenance and repair of the common elements. Amended and Restated Declaration, § 11.2. The unit owners must seek the Association's permission to do so. *Id.* The Declarations provide a method to resolve disputed between them. The Association must consent to any alterations of the heating system unless expressly allowed

1

REC'D CUMB CLERKS OFC
DEC 13 '22 PM 1:51

by the Declaration. *Id.*§ 11.1(D). A unit owner may install their own heating system and the associated wiring, piping, etc. *Id.* 2.2(F). Nothing in Section 2.2(F) removes the requirement of an owner to seek permission of the Association to alter the common elements.

Plaintiffs' complaint asked the court to consider a declaratory judgment regarding the voting rights and the financial obligations of each of the units. The Defendant's' counterclaim seeks a variety of relief. Count I seeks declaratory relief, primarily directed to the common assessments. Counterclaim ¶ ¶ 87 – 88, 91 – 97. Count I, however, also asked that the court order that Plaintiff Carol Detine participate in the governance of the Association because the association cannot act without her participation. The remaining counts of the Counterclaim are also primarily targeted to the issues regarding the common assessments. Count VI, however, alleges that Plaintiffs have breached their fiduciary duty, including Carol Detine's failure to participate in the condominium and the relief includes ordering her to participate as a director. Count VII alleges that the Plaintiffs have breached their duty of good faith and fair dealing as directors toward the other unit owners.

In November, 2022, the Plaintiffs began work to install a heat pump to supply heat to their unit. The work involved disconnecting their unit from the common heating supply. It also included alterations to common elements. These changes came long after the Complaint and Counterclaim were filed back in 2021. The Defendants filed a motion seeking a restraining order arising from the Plaintiff's installation of the heat pump. The motion seeks two categories of relief. First, the Defendants ask the court bar any additional work on the heating system. Second, the Defendants aske the court to compel Carol Detine to attend the Association meeting so that there is a quorum allowing the Association to act.

DISCUSSION

The Plaintiffs object to the Motion asking for the restraining order. First, they argue that the relief sought in the motion is not alleged in the Complaint. Second, they argue that the Defendants have failed to meet the requirements of a restraining order.

## 1. Sufficient allegations in the complaint.

Unlike the plaintiffs in *Koplow v. City of Biddeford*, 494 A.2d 175 (Me. 1985), the Defendants here have filed a counterclaim. Therefore, the issue is whether the Defendants' counterclaim has alleged the relief that the Defendants seek here. "The notice pleading standard, requires only that the complaint give fair notice of the cause of action by providing a short and plain statement of the claim showing that the pleader is entitled to relief, and then make a demand for that relief." *Nadeau v. Frydrych*, 2014 ME 154, ¶ 5 (citations and quotations omitted), citing M.R. Civ. P. 8(a).

Here, the Defendants clearly place the governance of the Association, and the Plaintiffs' alleged failure to cooperate in the governance of the condominium, at issue in their counterclaim. There are allegations asking the court to order Carol Detine to attend Association board meeting, a form of relief also sought here. Although it could have been better pled, the counterclaim also asked for injunctive relief. Counterclaim, ¶ 139. While there are no specific allegations seeking relief for arising from the installation of the heat pump, that claim arose from recent events.

The better practice would have been a motion to amend the counterclaim to seek the specific relief sought in the TRO Motion. Because the court would have allowed an amendment of the counterclaim arising from the recent installation of the heat pump given the recency of the events, because the court sees no benefit to requiring another round of motion practice to amend the counterclaim at this time, and because the court construes the counterclaim broadly to include

issues involving Association governance, the court proceeds to the merits of the claim. M.R.Civ.P. 1.

## 2. Temporary Restraining Order.

The Court may grant a temporary restraining order if it concludes the following: (1) the (counterclaim) plaintiff will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting the injunctive relief will inflict on the (counterclaim) defendant; (3) the counterclaim plaintiff has a likelihood of success on the merits: and (4) the public interest will not be adversely affected by granting the injunction. *Bangor Historic Track, Inc. v. Dep't of Agriculture,* 2003 ME 140, ¶ 9, 837 A.2d 129.

"Failure to demonstrate that any one of these criteria are met requires that injunctive relief be denied. . . [p]roof of irreparable injury is a prerequisite to the granting of injunctive relief." *Id.* (citation omitted). Irreparable injury is an injury for which money damages are not available. In cases involving possession of land, however, the court should not:

> consider these factors in isolation but should weigh all the criteria together in determining whether injunctive relief was proper in the specific circumstances of each case. .... The owner of the land is not compelled to part with the property at a value even though it would be much cheaper for the encroacher to pay money damages than to restore the property.

*Walsh v. Johnston,* 608 A.2d 776, 778.

With respect to work that impacts the common elements, the court finds that the Defendants have successfully met the criteria. The court finds that any alterations to the common elements without authority from the Association constitute an irreparable injury to the Defendant owners. An Association cannot govern if the terms of the Declaration are not respected. All the parties have a proportional interest in the common areas. Even if damages could be recovered for the alterations, that does not mean that harm was not done to any owners' property interests by the

4

unauthorized invasion of those common elements. Therefore, the court finds that unauthorized alterations of the common elements constitutes an irreparable injury.

To the extent the work has not been done, the injury to the Defendant's interests in the property outweighs the Plaintiffs' interest in this case. If the Plaintiffs had applied to the Association and had been unreasonably denied, the shoe may be on the other foot. The Plaintiffs' have no interest, however, in a right to alter the common areas without at first following the procedures laid out in the Declaration.

The court reserves for the final hearing, however, the fate of the alterations to the common area that have already been done. The Defendant's interests in the common element have already been impaired. Before balancing the equities with respect to the work that has already been done, the court awaits testimony at the final hearing in order to fashion an appropriate remedy, if any.

With respect to alterations to the common area, the court finds that it is more likely than not the Defendants will prevail. While the Declaration does allow the Plaintiffs to construct their own heating system, it does not effect the requirement that their plans to alter the common elements must follow the procedure laid out in the Declaration. When an owner purchases a condominium, they share an interest in common elements with others. An owner cannot unilaterally disengage from their fellow owners and alter the building. The parties have no choice but to engage with their fellow owners if they continue to own in this condominium.

The fourth factor, the public interest, is unaffected by this order.

The court does not grant the Defendant's request for injunctive relief regarding Detine's lack of participation in Association affairs. Based on the record to date, the court does not find sufficient evidence to date to compel her to attend meetings or to replace her as a director. The issue remains to be heard at the final hearing.

5

The court finds that no bond is required.

The entry is:

The Defendant's Motion for a Temporary Restraining Order is GRANTED in part.

The Plaintiffs are ORDERED not to alter the common elements of the condominium without permission of the Association. Any other relief sought is denied but may be raised in the final hearing of this matter.

This Order is incorporated on the docket by reference pursuant to M.R.Civ.P. 79(a).

DATE: _12/12/22_

Thomas R. McKeon
Justice, Maine Superior Court

6

STATE OF MAINE                         SUPERIOR COURT
CUMBERLAND, ss.                        LOCATION: PORTLAND
                                       CIVIL ACTION
                                       DOCKET NO. CV-2021-0103


CAROL DETINE & ROGER          )
WOODMAN,                      )
                             )
        PLAINTIFFS,          )
                             )
    v.                       )        ORDER ON PLAINTIFFS' MOTION
                             )        FOR JUDGMENT UNDER THE
MARIUSZ JANKOWSKI, JUDYTA     )        DECLARATORY JUDGMENT ACT ON
JANKOWSKI, LIANA HAWES &      )        PLAINTIFFS' COMPLAINT AND
CARRIAGE HOUSE OWNERS         )        SUMMARY JUDGMENT
ASSOCIATION,                  )
                             )
        DEFENDANTS,          )


Before the Court is Plaintiffs' Motion for Judgment Under the Declaratory Judgment Act

on Plaintiffs' Complaint and Motion for Summary Judgment on five of the seven counterclaims

raised in Defendants' answer. For the forthcoming reasons, Plaintiffs' Motion for Judgment

under the Declaratory Judgment Act on Plaintiffs' Complaint is DENIED, as is Plaintiffs'

Motion for Summary Judgment on Defendant's counterclaims I, II and IV. Plaintiffs' Motion for

Summary Judgment as to counterclaim III is GRANTED. Summary Judgment on Count V is

granted in part and denied in part.

## FACTUAL BACKGROUND

This case involves a dispute between owners of the three condominium units that make

up the Carriage House Condominiums. (Pl.'s S.M.F. ¶ 4, 29, 30.) The Plaintiffs Carol DeTine

and Roger Woodman (collectively "Plaintiffs") occupy a single unit, the Defendants Mariusz and

Judyta Jankowski occupy another and Defendant Hawes the third (collectively "Defendants").

(Pl.'s S.M.F. ¶ 4, 29, 30.) Defendant Carriage House Owners Association ("Association") is its own, separate, incorporated entity which represents the combined interests of the owners of the three units. (Def.'s S.M.F. ¶ 2.)

The Association was incorporated on November 16th, 1984 with the Office of the Maine Secretary of State and the condominium declaration establishing two condominium units located at the address of 178 Pine St., in Portland, Maine was filed on November 29th, 1984 ("1984 Declaration"). (Pl.'s S.M.F. ¶ 3) Also on that date, Roger Woodman—a Plaintiff here—and his then wife, Emily Woodman, purchased unit one. (Pl.'s S.M.F. ¶ 5.) They then also purchased unit two on October 22nd, 1987. (Pl.'s S.M.F ¶ 5 .) Approximately eight years later, on March 4th 1992, Plaintiff Woodman and his wife recorded an amendment to the 1984 Declaration increasing the number of condominium units from two to three and incorporating the disputed Exhibit B which is at the heart of this dispute ("1992 Declaration") (Pl.'s S.M.F. ¶ 8.)

On May 28th, 1992, Defendants Mariusz and Judyta Jankowski purchased the newly constructed unit three from Plaintiff Woodman and his wife. (Def.'s Add'l S.M.F. ¶ 2.) On March 31, 2006 Defendant Hawes purchased unit one. (Def.'s Add'l S.M.F. ¶ 3.) Since 2006, the parties have resided in their separate units of the Carriage House Condominiums respectively, partaking in the condominium governance process pursuant to the 1992 Declaration.

Condominium governance is the responsibility of the Association, which oversees the maintenance and upkeep of the three units and associated areas of shared use. (Pl.'s S.M.F. ¶ 31.) The Association is made up of three directors, one elected from each unit. (Pl.'s S.M.F. ¶ 31.) Defendant Mariusz Jankowsi has been the director elected from unit three since 1993 and Defendant Hawes has been the director elected from her respective unit since she purchased it in 2006. (Pl.'s S.M.F. ¶ 32-33.) From 1992 until 2020, Plaintiff Roger Woodman was the director

2

elected from unit two. (Pl.'s S.M.F. ¶ 34.) After his resignation in 2020, Plaintiff Carol DeTine, Woodman's co occupant, was elected as the Director from unit two. (Pl's S.M.F. ¶ 37.) For his entire term as a director, Plaintiff Woodman served as president and treasurer of the Association. (Def.'s Add'l S.M.F. ¶ 40.) When Plaintiff Woodman resigned, Defendant Mariusz Jankowski continued in the role of Treasurer, Defendant Hawes became President and newly elected Director, Plaintiff DeTine, became the Association's Secretary. (Def.'s Add'l S.M.F. ¶ 60, 64.) Since Plaintiff DeTine's election as director for unit two, the Association has held no meetings at which a sufficient quorum has been present to conduct Association business.[1] (Def.'s Add'l S.M.F. ¶ 64.)

The dispute between these parties primarily centers around one issue: the apportionment of payment of common element expenses among the three units.[2] (Def.'s Add'l S.M.F. ¶ 57.) From 1992 until 2020, costs associated with the common elements of the Carriage House Condominiums were apportioned pursuant to the square footage of each unit. (Def.'s Add'l S.M.F. ¶ 46.) Because unit two is the biggest in size, unit two paid the largest share of these expenses at 52% of the total amount. (Def.'s Add'l S.M.F. ¶ 46.) Unit three, the next largest in size by square footage calculation, paid 28%, and unit one paid 20%. (Def.'s Add'l S.M.F. ¶ 46.)

Until 2020, the Association's budget was prepared each year by the Association's President, Plaintiff Woodman. (Def.'s Add'l S.M.F. 10.) The budget apportioned costs

---

[1] The Association's bylaws require the presence of all three directors to constitute a quorum. (Def.'s Add'l S.M.F. ¶ 64.) As such, the Association has not been able to conduct meetings in Plaintiff DeTine's absence. (Def.'s Add'l S.M.F. ¶ 64.)

[2] Definitions for the terms "common element" and "common expense" are provided by the Maine Condominium Act. *See* 33 M.R.S. § 1601-103. Common elements are defined as "all portions of a condominium other than the units themselves," and common expenses include "expenditures made by, or financial liabilities of, the condominium association together with any allocations to reserves." *Id.*

3

associated with common elements in the manner outlined above and equally divided the special project expenses between the units in a percentage of 33 1/3 each.[3] (Pl.'s Compl. Ex. h.)

After twenty-eight years of this practice, on March 12, 2021, the Plaintiffs filed a one count complaint invoking this court's jurisdiction under 14 M.R.S. § 5953, seeking a declaratory judgment that common element expenses be apportioned according to schedule B of the 1992 Declaration and not, as had been the case for twenty-eight years, pursuant to square footage. On March 25th, 2021, The Carriage House Owners Association filed its answer to the Plaintiffs' complaint essentially taking no position as to the merits of the allegations. On April 5th, 2021, Defendants Mariusz Jankowski, Junyta Jankowski and Hawes jointly filed an answer to the Plaintiffs' complaint and in it, alleged seven counterclaims against Plaintiffs Woodman and DeTine. In response, the Plaintiffs filed a Motion for Judgment on their Complaint and Summary Judgment on May 24th, 2021 seeking a declaration that liability for common element expenses be apportioned into thirds, and to resolve Defendants' first five counterclaims in their favor.

Counterclaim I seeks a number of declaratory judgments including a declaration that common costs are assessed pursuant to square footage. Counterclaim II seeks reformation of the 1992 Declaration to reflect the square footage-based allocation of common expenses. Counterclaim III alleges that the Plaintiffs engaged in fraudulent misrepresentation, inducement and deceit, while counterclaim V alleges they engaged in negligent misrepresentation. Counterclaim IV raises the affirmative defense of equitable estoppel in an effort to preclude Plaintiffs from bringing their own action asserting that common expenses are allocated pursuant to the 33 1/3 percentage share laid out in the 1992 Declaration.

---

[3] Special project costs, sometimes referred to as "capital expenses" in the parties' pleadings, encompass improvements to structural elements of the shared building such as the roof, the electrical wiring apparatus and furnace that services the structure. (Def.'s Ans. ¶ 45.)

4

## SUMMARY JUDGMENT STANDARD

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *3 W Partners v. Bridges*, 651 A.2d 387, 389 (Me. 1994). A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact. *Lougee Conservancy v. CityMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (internal quotations omitted).

To survive a motion for summary judgment, the non-moving party must set forth prima facie evidence as to each element of a claim or defense that the party asserts. *See Savell v. Duddy*, 2016 ME 139, ¶ 18, 147 A.3d 1179. The court will consider reasonable inferences that may be drawn from the facts. *Curtis v. Porter*, 2001 ME 158, ¶ 9, 784 A.2d 18. When facts or reasonable inferences are in dispute on a material point, summary judgment may not be entered. *Id.*

## DISCUSSION

In the instant case, the Plaintiff has moved the court first, for judgment on its complaint seeking a declaratory judgment and second, for summary judgment on five of the seven counts in Defendants' counterclaim. Because the Plaintiffs' Motion for Judgment on its one count Complaint and Count I of Defendants' Counterclaim, both seek declaratory judgments as to expense apportionment, they are addressed together in section I(A) below. A summary judgment analysis of the other declarations sought and the four additional counterclaims then follows.

I. **Plaintiff's Declaratory Judgment Motion and Counterclaim Count I: Declaratory Judgment**

*A. Apportionment of Common Element Expenses*

Concurrent with their Motion for Summary Judgment on the Defendants' counterclaims, Plaintiffs' filed a Motion for Judgment on their one count complaint asking for a declaration that the common element expenses should be apportioned in thirds in accordance with the 1992 Declaration. *See Main v. S. Coast Radiology*, 2018 Me. Super. Lexis 161, at \*7 (Nov. 30, 2018) (holding that parties are free to move for summary judgment on their declaratory judgment claim). Defendants, in their first counterclaim, request a number of declaratory judgments of their own, including a declaration that the common costs be assessed pursuant to square footage. The court addresses both the Defendant and Plaintiffs' claims seeking to declare a common element expense allocation method together.

The Declaratory Judgments Act found at 14 M.R.S. §§ 5951-5963 empowers courts within their respective jurisdictions "to declare rights, status and other legal relations." The Act "provides a means for parties to have their rights, status and relations under existing written instruments judicially determined." *Hodgdon v. Campbell*, 411 A.2d 667, 669 (Me. 1980). The act is to be "liberally construed" in order to effectuate its purposes. *Id.*

In the instant case, both parties ask for the court to judicially determine the method in which common expenses are to be apportioned among the various unit owners of Carriage House Condominiums. After reviewing all documents submitted by both parties in support of their contentions, the Court agrees initially with the Plaintiffs that, pursuant to Section 2.5 of the 1992 Declaration, all common expenses are to be apportioned in thirds. 33 1/3 % paid by unit one, 33 1/3 % paid by unit two and 33 1/3 % paid by unit three.

Section 2.5 unambiguously states that "the allocations of common element interest . . . and common expense liability appurtenant to each unit are set forth in Exhibit B." Exhibit B then

6

provides that each unit has a 33 1/3 percentage interest in the common areas and a 33 1/3 share of liability for common expenses.[4] This is true in spite of the Defendants' assertion that the Association's bylaws conflict with the mandate of expense apportionment in the 1992 Declaration.[5]

However, in spite of the 1992 Declaration's clear language, the court notes that there are still genuine issues of fact. Namely, how this one-third apportionment applies to the Association's common element expenses, and, as addressed later, whether the Plaintiffs are estopped from seeking this declaratory judgment because of the twenty-eight years in which they operated as if expenses were apportioned pursuant to square footage.

Because there are still issues of fact as to the expense amounts and as to whether the doctrine of equitable estoppel applies, the court cannot grant Plaintiffs' Motion for Judgment on their one count complaint nor their Motion for Summary Judgment as to Defendants' first counterclaim.

### B. Other Declarations Sought

In their first counterclaim, Defendants also ask for a number of additional declarations. *See* Def.'s Ans. ¶¶ 89-98. In their Motion for Summary Judgment, the Plaintiffs only address two.

First, they address Defendants' claim that the parties are required by the 1992 Declaration to exhaust all administrative remedies available to them before seeking judicial intervention. In this case, the Defendants allege that a meeting of the three-member board of the Association is

---

[4] Common elements for which expenses may be calculated are laid out in section 3.1(A) of the 1992 Declaration. They include (1) the land; (2) the foundations, roofs, studs, joists, exterior walls, and all load bearing portions of the building; (3) the chimneys and flues; (4) all pipes, wires, electrical and transmission wires and conduits, any life safety systems, the original furnace and related controls. Oil tank and pipes, distribution pipes and water and sewer utility lines which serve more than one unit; and (5) all other parts of the property necessary or convenient to its existence, maintenance and safety or normally in common use, except as otherwise expressly provided in this declaration.

[5] 33 M.R.S. § 1602-103(c) provides that in the event of a conflict between the declaration (or its properly recorded amendments) and the bylaws, the declaration prevails.

required pursuant to section 13.3 of the 1992 Declaration.[6] The Plaintiffs claim that the Declaratory Judgment Act authorizes them to bring this action regardless. At the heart of this issue is whether the Plaintiffs' initial complaint is ripe for judicial review.

A case may only be brought pursuant to the Declaratory Judgment Act when a genuine controversy exists among the parties. *Lewiston Daily Sun v. Sch. Admin. Dist. No. 43,* 1999 ME 143, ¶ 20, 738 A.2d 1239. A genuine controversy exists if a case is ripe for judicial consideration and action. *Wagner v. Secretary of State,* 663 A.2d 564, 567 (Me. 1995). A ripeness analysis involves two principal points of focus: the fitness of the issue for judicial decision, and the hardship to the parties of withholding court consideration." *Patrons Oxford Mut. v. Garcia,* 1998 ME 38, ¶ 4, 707 A.2d 384.

A plaintiff may maintain a declaratory judgment action even though an alternative remedy may be available to him. *Annable v. Board of Environmental Protection,* 507 A.2d 592, 595 (Me. 1986). Where the Plaintiff seeking declaratory relief is not appealing from an adverse administrative decision, the "requirement of exhaustion of remedies is inappropriate." *Id.*

In the case at bar, the court agrees with the Plaintiffs that their instant action may proceed despite the failure of the Association to hold a meeting pursuant to section 13.3 of the Declaration. This is true regardless of the reason for this failure.

The Plaintiffs have brought a controversy to this court fit for judicial decision. The parties are in substantial disagreement and it seems that even if the Association's board of directors met, the meeting would be futile in resolving the instant dispute. Therefore, this court agrees that the Plaintiffs action may proceed in spite of non-compliance with section 13.3 of the declaration in this instance.

---

[6] Section 13.3 states that "where there is a dispute or disagreement in interpreting the Declaration or bylaws of the Association, its Board of Directors shall determine such dispute, whose determination is binding on all parties."

Lastly, Defendants seek a declaration that the Plaintiffs owe a balance to the association pursuant to sixteen years of alleged underpayments on their share of common element expenses from 1992-2008. The record, viewed in the light most favorable to the Defendants, presents a number of factual issues sufficient for this claim to survive summary judgment as well.

### C. Conclusion

In sum, the Plaintiffs' Motion for a Declaratory Judgment on their complaint is denied, as is their Motion for Summary Judgment on Defendants' first counterclaim. Even though the court agrees that the language of the 1992 Declaration unambiguously apportions expenses into thirds, and that the Plaintiffs' action may continue despite a failure to invoke section 13.3 of the declaration, there are still genuine issues of material fact as to multiple portions of the claim

## II. **Counterclaim Count II: Reformation**

In their Count II of their Counterclaim, Defendants seek reformation of the 1992 Declaration. In their Summary Judgment Motion, Plaintiffs seek a judgment that the requested reformation is unavailable as a matter of law.

### A. Statute of Limitations

Because the Declaration was prepared more than six years before the litigation commenced, the Plaintiffs assert that the reformation claim in Count II is barred by Maine's six year statute of limitations. 14 M.R.S. § 752.

In their filings, neither party made any effort to determine when the Statute of Limitations began to accrue beyond a mere recitation of the dates that each defendant purchased their condominium. The court notes that when the statute of limitations on a reformation claim would begin to run in Maine is not settled law. *See Bank of N.Y. Mellon v. King*, 2018 Me. Super. LEXIS 124 at *6 (Aug. 27, 2018) (comparing the case law from other states and holding that the six-year

9

limitation imposed by section 752 barred reformation of a deed and mortgage because a cause of action for reformation accrues *at the time the alleged mistake was made*, which was ten years prior to the filing of the complaint) (emphasis added). *Compare Ward v. Robinson-Dick*, 1985 Me. Super. LEXIS 42 at *3 (Feb. 20, 1985) (holding that the equitable doctrine of laches operates to determine when the cause of action accrues and if it is barred). Given that the parties have not briefed the issue, the court does not decide it here.[7]

Because the parties make no attempt at addressing when the statute of limitations on the reformation claim begins to accrue, the court is unable to find that the statute of limitations bars the defendant's reformation claim as a matter of law based on the briefing an record to date.

B. *Plaintiff's legal challenge to the reformation claim*

The Plaintiffs argue that the Defendants cannot seek reformation in their Counterclaim as a matter of law. The doctrine of reformation is routinely used to mold a writing to the parties' original intent. *Slipp v. Stover*, 651 A.2d 824, 828 (Me. 1994). Reformation of a writing is usually granted when there has been some sort of mutual mistake among the parties to a contract leading to the writing's nonconformity with the original intent of the parties. *See e.g, Yaffie v. Lawyers*

---

[7] Defendants, in their Reply to the Plaintiffs' Motion, assert that 14 M.R.S. § 865 allows their counterclaim to survive the six-year limitation. Section 865 provides:

> All the provisions hereof respecting limitations apply to any counterclaim by the defendant except a counterclaim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim to the extent of the demand in the plaintiff's claim. *The time of such limitation shall be computed as if an action had been commenced therefore, at the time the plaintiff's action was commenced.*

(emphasis supplied). If Section 865 applies, then it only means the court considers the date that the Complaint was filed, and not the date when the Counterclaim was filed, when considering the statute of limitations. The court does not see how that helps save the Defendants' reformation counterclaim. In addition, a claim "saved" by Section 865 only provides a method on recoupment. *Union Trust v. Hardy*, 400 A.2d 384, 392 (Me. 1979). The parties have made no explanation how that would work here.

The court, for the reasons identified in the discussion on Count III of the Counterclaim, did not find that the there was a genuine issue of material fact with respect to any fraudulent conduct that would extend the statute of limitations.

10

*Title Ins. Co.*, 1998 ME 77 ¶ 10, 710 A.2d 886 (reforming an insurance contract when both parties sincerely held different beliefs as to the scope of insurance coverage conferred by the contract); *Slipp v. Stover*, 651 A.2d 824, 828 (Me. 1994) (reforming a deed to land where a third party drafter mistakenly identified the land to be sold and the parties failed to realize the mistake before signing). The existence of a mutual mistake must be proven by clear and convincing evidence. *Baillargeon v. Estate of Daigle*, 2010 ME 127, ¶ 16, 8 A.3d 709.

Intent of a party is a question of fact which is gathered from the language of the instrument viewed in the light of all the circumstances under which it was made, construed in respect to the subject matter, the motive and purpose of making the instrument and the object to be accomplished. *See Top of the Track Assocs. V. Lewiston Raceways*, 654 A.2d 1293, 1295-96 (Me. 1995) (internal quotations omitted).

The Plaintiffs do not argue that there is no genuine issue of material fact with respect to the intent of the Declarant. Therefore, the court does not examine the record to determine whether Defendant made a *prima facie* case whether there was a mutual mistake in the document that belied the intent of the 1992 Declaration's creator(s.)

Instead, Plaintiff argues that because the Maine Condominium Act requires that a Declaration be in writing and recorded, there can be no reformation. The Plaintiffs cite no authority for that position. Deeds or mortgages also have to be in writing and are recorded and can be reformed. The court is not aware of any authority that bars a reformation claim as a matter of law with respect to a condominium document.

The Plaintiffs also rely on *Thompson v. Glidden* in support of their position that the 1992 Declaration cannot be reformed. 445 A.2d 676 (Me. 1982). In *Thompson*, the Law Court held that the declaratory judgment act does not empower courts to reform agreements. *Id.* at 679. In that

11

case, the parties had not sought a reformation or, apparently, proved what is necessary to achieve a reformation. In *Thompson,* the court merely held that the Declaratory Judgment Act, alone, does not empower the court to reform an incident. Here, Count II of Defendants' Counterclaim seeks reformation. *Thompson* does not apply.

For these reasons, the court denies the Plaintiffs' Motion for Summary Judgment on Count II. The statute of limitations issue on Count II remains undecided.

## III. **Counterclaim Count III: Fraudulent Misrepresentation, Fraudulent Inducement and Deceit**

Next, the Plaintiffs seek summary judgment on the Count III of the Counterclaim asserted by the Defendants which alleges that the Plaintiffs engaged in fraudulent misrepresentation, fraudulent inducement and deceit when they represented at the time of, and subsequent to, the Defendants purchase of their units that common element expenses were apportioned pursuant to the square footage of each unit.

In this instance, to prevail on their claims of fraud and deceit the Defendants must show: "(1) that [the Plaintiffs] made a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing [the Defendants] to act in reliance upon it, (5) [the Defendants] justifiably relied upon the representation as true and acted upon it to [their] damage."[8] *Barr v. Dyke,* 2012 ME 108 ¶ 16, 49 A.3d 1280.

To withstand summary judgment on their fraud claim, the defendants are required to prove each element with clear and convincing evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

---

[8] In their Motion for Summary Judgment, Plaintiffs allege that there are three additional elements for the tort of deceit beyond those for fraud. *See* Pl.'s Mot. S.J. 14. In support they cite *Coffin v. Dodge,* 146 Me. 3, 5-6, 76 A.2d 541, 543 (1950). However, *Coffin* was decided in reliance on *Crossman v. Bacon,* 119 Me. 105, 109 A. 487 (1920) which was expressly overruled in *Letellier v. Small,* 400 A.2d 371 (Me. 1979). *Letellier* eliminated the contributory negligence element of an action for deceit.

255 (1986). To do so, they must demonstrate that the existence of each element is 'highly probable' rather than 'merely likely'. *Barnes v. Zappia*, 658 A.2d 1086, 1089 (Me. 1995).

Here, the Defendants cannot show that each element of fraud is "highly probable." Although there are certainly questions of fact as to the materiality and falseness of Plaintiff Woodman's representations, the Defendant has failed to generate a genuine dispute as to whether Plaintiff Woodman acted with knowledge of the falsity of his representations or with reckless disregard as to whether they were false. In the light most favorable to the Defendants, the summary judgment record presents no evidence—beyond conclusory allegations by the Defendants—which would suggest otherwise.

Moreover, it is unclear what damages the Defendants suffered as a result of Plaintiff Woodman's representations. If anything, the apportionment of expenses based upon square footage actually worked to their benefit. The 28% share that unit three paid and the 20% share that unit one paid are less than the 33 1/3 % each unit would have paid had Plaintiff Woodman represented the apportionment correctly.

Accordingly, the court finds that there are no genuine issues of material fact as to whether the Defendants can demonstrate that the existence of each element of fraudulent misrepresentation, fraudulent inducement or deceit is "highly probable." The Plaintiff's Motion for Summary Judgment on Count III Defendants' Counterclaim is granted.

IV. **Counterclaim IV: Equitable Estoppel**

Fourth, the Plaintiffs seek summary judgment on Defendants' claim that their twenty-eight-year acquiescence to and complicity in the square footage based apportionment scheme estops them from bringing suit.

Equitable estoppel is an affirmative defense that "precludes a party from asserting rights which might perhaps have otherwise existed, against another person who has in good faith relied upon [the party's] conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right." *InfoBridge, LLC. v. Chimani, Inc.*, 2020 ME 41 ¶ 7, 228 A.3d 721 (quoting *Dep't of Health & Human Servs. v. Pelletier*, 2009 ME 11, ¶ 17, 964 A.2d 630). To invoke the doctrine of equitable estoppel, a party must establish that he or she reasonably relied on a misrepresentation—through "misleading statements, conduct, or silence," or a combination thereof by the party seeking to assert their rights. *Id.* ¶ 18; *see also Longley v. Knapp*, 1998 ME 142, ¶ 12, 713 A.2d 939 (holding that the defense does not require proof of an intent to mislead).

Defendants generated evidence that for twenty-eight years, Plaintiff Woodman continuously represented in his individual capacity and in his capacity as president and treasurer of the Association, both in writing and orally, that expenses were apportioned pursuant to the square footage of each unit. Plaintiffs, in response, claim Plaintiff Woodman made no such representations. It is clear from the record that the Defendants have raised genuine issues of material fact supporting the elements of an equitable estoppel claim that could bar the Plaintiffs from enforcing the 1992 Declaration. The question of whether equitable estoppel is actually applicable here is ultimately a question for the finder of fact. Accordingly, the Plaintiffs' Motion for Summary Judgment on Defendants' fourth counterclaim is denied.

## V. Counterclaim V: Negligent Misrepresentation

Finally, the Plaintiffs seek summary judgment on the Defendants' fifth counterclaim alleging negligent misrepresentation as to how common element expenses are apportioned among the units.

14

Plaintiffs' again claim that the statute of limitations bars the defendant from bringing this claim while Defendants counter that Section 865 allows it. As discussed earlier, *infra,* p. 10 n. 7, the court is not persuaded that Section 865 helps the Defendants as it only takes moves back the running of the statute of limitations for the month between the Complaint and the Counterclaim. 14 MRS § 865 may still apply to save the negligent misrepresentation claim for representations, if any, between the time of the Plaintiffs Complaint and the Counterclaim. Even then, it would only be in only in the form of a recoupment. *Union Trust v. Hardy,* 400 A.2d 384, 392 (Me. 1979). The court agrees that the six year statute of limitations bars any claim arising from any negligent misrepresentation arising more than six years prior to the Defendants' Counterclaim.

To the extent that the Defendants' negligent misrepresentation claim survives section 752, the record raises substantive issues of fact which preclude summary judgment. Negligent misrepresentation occurs when someone, in the course of any transaction in which he has pecuniary interest, supplies false information and fails to exercise reasonable care or competence in communicating that information. *Chapman v. Rideout,* 568 A.2d 829, 830 (Me. 1990). Liability for negligent misrepresentation only attaches if, when communicating the information, the defendant fails to exercise the care or competence of a reasonable person under similar circumstances. *Rand v. Bath Iron Works Corp.,* 2003 ME 122, ¶ 13, 832 A.2d 771 (quoting Restatement (Second) Torts § 552(1) cmt. e). This inquiry is a question for the fact-finder. *Id.* Accordingly, unlike fraud or deceit, the defendant's knowledge is largely immaterial for negligent misrepresentation, and the fact-finder's primary task is to ascertain whether the defendant's conduct was reasonable. *Id.*

Here, there are genuine issues of fact as to whether the Plaintiffs exercised the care or competence of a reasonable person when they communicated—within six years of the Plaintiff's

15

Complaint—that common element expenses are apportioned pursuant to square footage despite the contrary language in the 1992 Declaration.

Accordingly, Plaintiffs' Motion for Summary Judgment on Count V of Defendants' Counterclaim is denied with respect to any misrepresentation made since Defendant filed their Counterclaim, and granted with respect to any misrepresentation made beyond the six year statute of limitations.

## CONCLUSION

**The Entry is:**

Plaintiffs' Motion for Judgment Under Declaratory Judgment Act is DENIED

Plaintiffs' Motion for Summary Judgment as to Counterclaim Count III is GRANTED

Plaintiffs' Motion for Summary Judgment as to Counterclaims Counts I, II and IV is DENIED.

Plaintiff's Motion for Summary Judgment on Count V is granted in part and denied in part. The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: September 1, 2021

Thomas McKeon,
Justice, Superior Court

16