Nettie F. THOMPSON

v.

Gary A. GLIDDEN and Sylvia A. Glidden.

Supreme Judicial Court of Maine.

Argued May 3, 1982.
Decided May 24, 1982.

Vafiades, Brountas & Kominsky, Charles E. Gilbert, III (orally), Bangor, for plaintiff.

Eaton, Glass & Marsano, Francis C. Marsano (orally), Belfast, for defendants.

Before McKUSICK, C. J., and NICHOLS, ROBERTS, CARTER and WATHEN, JJ.

WATHEN, Justice.

Plaintiff appeals from a decision of the Superior Court (Waldo County). The Court denied her request for relief under a support mortgage granted to her by defendants and established life estates in the parties in various rooms of the house that they share. We sustain the appeal and vacate the judgment below.

In 1967 plaintiff, who was losing her sight and hearing, deeded her house and land in Troy, Maine to defendants, who are plaintiff's adopted daughter and son-in-law. Defendants in turn gave plaintiff a support mortgage which reconveyed the property to plaintiff with the provision that if defendants fulfilled the conditions of the mortgage the conveyance would be void. The support mortgage provided that defendants would pay the insurance and taxes on the house and furnish plaintiff

> with food, clothing and shelter on said premises so long as she may live and take care of her necessities of life to the extent that she cannot take care of them herself.

The testimony presented at trial shows that the parties have lived together in the house since November 1969 although the relationship between them has deteriorated markedly since March 1978.

In February 1979 plaintiff filed a complaint alleging that defendants had breached their promise to provide her with food, clothing, shelter and the necessities of life. The complaint, which contained four counts, sought foreclosure of the support mortgage, rescission of the conveyance from plaintiff to defendants, a declaratory judgment establishing the rights and duties of the parties under the support mortgage, and the designation of defendants as trustees of the property in question for the benefit of plaintiff.[1] A non-jury trial was held, and the rescission claim was denied at the end of the presentation of all plaintiff's evidence. After trial the presiding justice construed the support mortgage most strongly against the plaintiff to find that there had been no breach. He denied all of plaintiff's other claims for relief except that for a declaratory judgment. Relying on evidence presented concerning use of the house, the court established a life estate in plaintiff in a sitting room and bedroom. The decree gave defendants a life estate in the upper floor of the house and in the family room. The bath, laundry and kitchen were to be used jointly. Plaintiff assigns as error the trial court's construction of the support mortgage, the court's finding that there was no breach of the mortgage, and the establishment of the life estates.

Initially we note that the support mortgage is a simplistic legal response to a very complex need for financial and personal planning. Because it employs rigid conveyancing and contract concepts in an attempt to structure economic, interpersonal, and family relationships, it is not surprising that its history has been marked by conspicuous failure. Modern socio-economic conditions and changes within the structure of the family increase rather than decrease the

---

1. Defendants filed counterclaims against plaintiff and William Smith, both of which were disposed of and are not in issue here.

likelihood of dispute. Judicial resolution, bound as it is to the underlying principles of property and contract law, is necessarily incomplete and formalistic.

### Construction of the Mortgage

The trial court found that the support mortgage in this case was drafted by plaintiff's attorney, and finding the instrument ambiguous, the presiding justice construed it most strongly against plaintiff. Although this rule of construction is commonly accepted in commercial and business transactions, *see, e.g., Hills v. Gardiner Savings Institution*, Me., 309 A.2d 877 (1973), we agree with plaintiff that its application in this case is inappropriate. The instant support mortgage is not a contract of adhesion nor do the circumstances require construction against the drafter in order to meet the expectations of the party in the inferior bargaining position. *Dairy Farm Leasing Co., Inc. v. Hartley*, Me., 395 A.2d 1135, 1139, n.3 (1978). In fact defendants actively participated in the drafting of the documents, refusing to sign them until they had been redrafted to meet their specifications.

■ Moreover, a support mortgage is not an ordinary contract which requires application of the rule of strict construction against the drafter in order to ascertain the intent of the agreement. The intent, implicit in the nature of the agreement, has been aptly described by a Rhode Island court:

> One under stress of infirmity or age surrenders his property to another for relief from care and anxiety, and receives in return an assurance of support .... [A] feeble party has fully performed his part of the contract in the hope of security and quiet.

*Grant v. Bell*, 26 R.I. 288, 58 A. 951 (1904). To give effect, therefore, to the unique purpose of a support mortgage, contracts of this nature should be liberally construed in favor of the elderly grantors. *Tuttle v. Burgett's Adm'r*, 53 Ohio St. 498, 42 N.E. 427, 429 (1895); *see also Strock v. MacNicholl*, 196 Va. 734, 85 S.E.2d 263, 269 (1955).

■ The rule of construction utilized by the trial court must necessarily have tinctured its evaluation of the evidence presented in this case. The court's order reveals that in determining whether there was a breach of the agreement the trial justice focused solely on whether the physical maintenance requirements of the support mortgage had been met. In considering agreements of this kind, many jurisdictions have recognized that in addition to the explicit promise of physical well being there is also an implicit promise of peace, harmony, and emotional well being:

> In addition to the physical necessities, the grantor has the right to expect reasonable personal care and the courtesies and kindness usually obtaining between individuals that have the same ties of blood or association in families of similar station as those of the contracting parties. "According to the view ordinarily taken, the agreement of a grantee to furnish his grantor support, especially where the parties expect to reside together, is to be construed as contemplating not merely physical necessities, but kindness, and personal care and attention."

*Strock v. MacNicholl*, 196 Va. 734, 85 S.E.2d 263, 268 (1955) (quoting Note, 112 A.L.R. 670, 708). *See also, Payne v. Winters*, 366 Pa. 299, 77 A.2d 407 (1951); *Brinkley v. Patton*, 194 Okl. 244, 149 P.2d 261 (1944); *Grant v. Bell*, 58 A. at 951–52. The liberal construction in favor of the grantor which we have mandated requires that any evaluation of the evidence to determine whether a breach of the support mortgage has occurred must employ this broader view. We therefore remand this case to Superior Court for a reconsideration of the evidence under the more expansive construction that we now announce.

### Declaratory Relief

■ Plaintiff argues that the declaratory judgment granted by the court in essence reformed the agreement between the parties rather than construing it. We agree. The deed and the accompanying support mortgage which the court was asked to construe were conveyances in fee simple.

In declaring the rights of the parties under these instruments, the court established life estates in separate sections of the house, thereby creating entirely different interests in the property than had been created by the original instruments. The relief sought in Count III of the complaint was not a reformation of the agreement between the parties but a declaration of the parties' rights and duties under the support mortgage.[2] The Declaratory Judgments Act, 14 M.R.S.A. § 5951–5963 (1980), provides a means for parties to have their rights, status and relations under existing written instruments judicially determined. Although the Act is to be liberally construed, *Hodgdon v. Campbell*, Me., 411 A.2d 667 (1980), it does not authorize the reformation of agreements. Upon remand the court should confine any order under Count III to a declaration of the rights and duties of the parties under the existing instruments.

The entry is:

Judgment vacated.

Remanded to Superior Court for further proceedings consistent with the opinion herein.

---

2. Even if the parties had sought reformation, the resolution achieved by the trial justice is incomplete. In establishing life estates in the residence the court failed to make any provision for the substantial acreage which is included in the conveyances and failed to address the potential problems arising from the reversionary interests which would be concomitant to the granting of the life estates.