STATE OF MAINE                              SUPERIOR COURT
OXFORD, ss.                                 CIVIL ACTION
                                            DOCKET NO. CV-21-021

W. GREGORY LATOUF and THOMAS C.  )
LATOUF,                          )
                                 )
                   Plaintiffs    )
                                 )          DECISION AND JUDGMENT
       v.                        )          (Title to Real Estate is Involved)
                                 )
RICHARD BARNARD,                 )
                                 )
                   Defendant     )

The parties are neighbors in Albany, Maine, who dispute the location of their shared property line. After years of disagreement regarding the location of the property line and ownership of a sliver of land, Plaintiffs W. Gregory LaTouf and Thomas C. LaTouf filed a 6-count complaint against Defendant Richard Barnard, seeking a declaratory judgment, injunctive relief, and damages for trespass and nuisance. The Court held a 1-day bench trial on May 2, 2023, at which both parties presented evidence.

## FACTUAL BACKGROUND

The parties own abutting real property in Albany, Maine, with the LaToufs owning property to the west of Mr. Barnard. The origins of the Plaintiffs' property may be traced back to the 1805 Plan for the Township of Albany, which delineates designations of land by lot and range. (Pl. Ex. 4.) Lot 5, Range 5 includes what is now the Latoufs' property. (Pl. Exs. 4, 32.)

Due to historical events including the Civil War, the resting deed for the LaToufs' chain of title is not dated until August 10, 1878. (Pl. Ex. 3.) That deed, recorded in the Oxford County Registry of Deeds in Book 179, Page 260, reflects a transfer of part of Lot 5, Range 5 from the Inhabitants of the Town of Albany to Norway Savings Bank. (*Id.*) A deed dated May 8, 1882, and

1

recorded on July 22, 1882, in the Oxford County Registry of Deeds at Book 198, Page 145, also reflects a transfer of Lot 5, Range 5 from Abernathy Grover to George Beckler. (Pl. Ex. 5.) George Beckler became the owner of all of Lot 5, Range 5 after Norway Savings Bank released its interest in the property to him by deed recorded on January 9, 1884, in the Oxford County Registry of Deeds in Book 198, Page 553. (Pl. Ex. 6.)

Between 1896 and 1946, Lot 5, Range 5 was deeded between and among a number of individuals. (Pl. Exs. 7-10, 12-14.) By 1946, all of Lot 5, Range 5 was owned by Fred Littlefield, who then conveyed the entirety of the real property to Floyd Kimball by deed dated July 1, 1947, and recorded on July 10, 1947, in the Oxford County Registry of Deeds in Book 488, Page 326. (Pl. Exs. 11, 13-14, 32.) The 1947 Tax Plan of Albany Township identifies Floyd Kimball's ownership of Lot 5, Range 5, with the eastern boundary of that lot extending beyond the Crooked River to the western boundary of Range 4. (Pl. Ex. 32.) The tax plan also shows a 1941 pipeline existing within the bounds of Lot 5, Range 5 to the west of the Crooked River and traveling north to south. (Pl. Ex 32.)

In 1950, Lot 5, Range 5 was transferred to Grafton Lumber Company by a deed recorded on October 10, 1950, in the Oxford County Registry of Deeds in Book 515, Page 251. (Pl. Ex. 15.) After another series of transfers between 1964 and 1978, Rosenfeld Land Company became the owner of all of Lot 5, Range 5 by deed dated April 18, 1975, and recorded on April 22, 1976, in the Oxford County Registry of Deeds in Book 853, Page 254. (Pl. Exs. 16-20.)

Three years later, in 1978, Rosenfeld Land Company transferred a portion of Lot 5, Range 5 to P.H. Chadbourne & Co. by deed dated December 29, 1978, and recorded on January 2, 1979, in the Oxford County Registry of Deeds in Book 1019, Page 192. (Pl. Ex. 21) The metes and bounds description in this deed sets the eastern boundary of the deeded property at the Crooked

2

River. (Pl. Ex. 21.) P.H. Chadbourne & Co. subsequently transferred that same portion of Lot 5, Range 5 to Ellis Realty Trust by deed dated December 22, 1982, and recorded on December 27, 1982, in the Oxford County Registry of Deeds in Book 1188, Page 58. (Pl. Exs. 2, 22.)

Ellis Realty Trust then conveyed a portion of the property to Robert Bond Jr. and Helen Bond by deed dated April 25, 1984, and recorded on April 27, 1984, in the Oxford County Registry of Deeds at Book 1255, page 129. (Pl. Ex. 23.) Relevant to the dispute between the LaToufs and Mr. Barnard, the deed does not convey that portion of the property between the Crooked River and the Portland pipeline, which is located to the west of the river. (*Id.*) Instead, and even though the deed indicates it is conveying 40 acres, the deed describes the eastern boundary of the property as the "line of land of [the] Portland Pipe Line Company." (*Id.*)

The parcel of property bounded on the east by the Portland pipeline was subsequently deeded by a number of individuals. (Pl. Exs. 25-27, 39.) Ultimately, the property was transferred to the Albany Land Trust by deed recorded on June 23, 1997, in the Oxford County Registry of Deeds in Book 2447, Page 91. (Pl. Ex. 28.) Albany Land Trust deeded the property to Virginia Colby, Glen Allen, and Robert Barber, by deed recorded on October 31, 2011, in the Oxford County Registry of Deeds in Book 4777, Page 236 (Pl. Ex. 29), who then deeded the property to Plaintiffs W. Gregory LaTouf and Thomas C. LaTouf by deed recorded on October 31, 2011, in the Oxford County Registry of Deeds in Book 4777, Page 238. (Pl. Ex. 30.)

At the time they purchased the property, the LaToufs believed that the Crooked River formed the eastern boundary of their property. In reality, however, the LaTouf property was bounded on the east by the Portland pipeline. (*Id.*) The property to the east of the Portland pipeline was owned by Ellis Realty Trust. (Pl. Ex. 22-23.)

In 2015, Mr. Barnard purchased property east of the LaTouf property. The parties first met

3

shortly after Mr. Barnard's purchase. During that meeting, both parties expressed the belief that they owned the strip of land between the Portland pipeline and the Crooked River.

At different times over the next few years, Mr. Barnard crossed the Crooked River and engaged in various acts on the property west of the river, including cutting trees to create a snowmobile trail, riding on the property in his snowmobile, dumping construction debris, erecting a shack, posting no trespassing signs, and marking trees with paint. Likewise, the LaToufs also continued to act as though they owned the disputed sliver of property to the west of the Crooked River. At some point, Gregory LaTouf directed his father to spray paint purple lines along the easterly line of trees where Mr. Barnard was crossing the river. Not surprisingly, the parties' relationship deteriorated over time as a result of the boundary dispute.

Ultimately, Gregory LaTouf more closely reviewed his deed and realized that, contrary to his prior belief, his 2011 deed described the easterly boundary of his property as following the Portland pipeline rather than the Crooked River. It is unclear to the Court whether Mr. LaTouf realized this error before or after he hired Donald Dostie, a professional land surveyor, to survey the property and prepare a boundary survey. Regardless, as a result of this realization, the LaToufs took steps to achieve ownership of that slice of property between the Portland pipeline and the Crooked River.

On March 15, 2021, to "correct errors in the legal description" in the deed from Ellis Realty Trust to the Bonds, Ellis Realty Trust executed a corrective deed, conveying any remaining interest in the subject parcel of land to the LaToufs. (Pl. Ex. 31.) The Corrective Deed of Release by Trustee was recorded on March 16, 2021, in the Oxford County Registry of Deeds in Book 5591, Page 553. (*Id.*) Exhibit A to the deed contains the following description:

> A certain lot of parcel of land situated in the Township of Albany, County of Oxford, and State of Maine, being all the same remaining from property conveyed by P.H.

4

Chadbourne & Co. to Ellis Realty Trust by instrument dated December 22, 1982, and recorded in the Oxford County Registry of Deeds in Book 1188, Page 58, said remaining property being bounded on the north by land now or formerly of Bennett by instrument recorded in said Registry of Deeds in Book 1202, page 134; *on the east by the thread of the Crooked River*; on the south by land now or formerly of Francis by instrument recorded in said Registry of Deeds in Book 1203, Page 131; and on the west by property conveyed to the Grantees herein by deed from Glen Allen, *et al.*, dated October 28, 2011, and recorded in said Registry of Deeds in Book 4777, Page 238.

(Pl. Ex. 31, Ex. A.) (emphasis added.) The italicized language in this description highlights that, as of March 15, 2021, the eastern boundary of the LaToufs' property is the Crooked River. (*Id.*) This boundary line was confirmed by a Plan of Boundary Survey completed by Mr. Dostie ("Dostie Plan").[1] True and accurate copies of the Corrective Deed and Plan of Boundary Survey, as revised, are attached hereto as Exhibits 1 and 2, respectively.

One day after Ellis Realty Trust executed the Corrective Deed, Mr. Barnard crossed the Crooked River onto the LaToufs' property and removed three game cameras. The cameras were located several days later in different locations.

Armed with the Corrective Deed and the Dostie Plan, the LaToufs[2] filed a complaint against Mr. Barnard on April 5, 2021, seeking a Declaratory Judgment (Count I) and Injunctive Relief (Count VI), and alleging Common Law Trespass (Count II), Statutory Trespass (Count III), Injury to Land (Count IV), and Nuisance (Count V). Mr. Barnard filed an answer on May 7, 2021, which was later served on the Plaintiffs in July of 2021.

As part of the initial filing, the Plaintiffs sought an ex parte temporary restraining order, which the Court granted, in part, on April 11, 2021, "for the limited purpose of maintaining the

---

[1] The Plan of Boundary Survey was subsequently updated in January of 2023. (Pl. Ex. 1.)

[2] The complaint was initially filed in W. Gregory LaTouf's name, alone. It was subsequently amended in December of 2021 to name Thomas C. LaTouf as an additional plaintiff.

status quo of the parcel, and preventing further irreparable alterations to its natural composition." 4/11/21 *Ex Parte* Temporary Restraining Order ("TRO") at 5. The TRO prohibited Mr. Barnard, or anyone acting on his behalf, "from entering onto any property situated to the west of the Crooked River." *Id.*

Subsequently, the Court held Mr. Barnard in contempt for violating the TRO by "using a weed whacker to trim vegetation on land located west of the Crooked River." 9/30/21 Order on Plaintiff's Motion for Contempt and Mandating Mediation ("Contempt Order") at 5. The Court declined to impose specific remedial sanctions at that time, however, and instead took the "imposition of remedial sanctions under advisement" and noted that it "could impose them at a later date either pursuant to another court order or after another hearing in the matter." *Id.* at 7.

The Court held a one-day bench trial on May 2, 2021, at which the parties testified and presented documentary evidence. The key witness at trial was the Plaintiff's expert, Donald Dostie, who testified to the extensive process that he undertook to determine the LaToufs' boundary lines. Mr. Dostie credibly testified to his conclusion that the LaToufs' eastern boundary is the Crooked River, as reflected on the revised Plan of Boundary Survey. The Court heard also heard confusing reference to other surveys, but none were admitted in evidence and the Defendant did not offer any expert testimony.

## DISCUSSION

### I. DECLARATORY JUDGMENT (Count I)

The LaToufs seek a declaratory judgment "confirming that the eastern boundary of the LaTouf Property is the Crooked River," as stated in the Corrective Deed and the Dostie Plan. (Amended Compl. ¶ 38.) Mr. Barnard, on the other hand, takes the position that the LaToufs' eastern boundary is the Portland pipeline.

The Declaratory Judgments Act, 14 M.R.S. §§ 5951-5963, "provides a means for parties to have their rights, status and relations under existing written instruments judicially determined." *Thompson v. Glidden*, 445 A.2d 676, 679 (Me. 1982). The Act is "remedial in nature and should be liberally construed." *Hodgdon v. Campbell*, 411 A.2d 667, 669 (Me. 1980).

The Court accepts Mr. Dostie's testimony and credits his expert opinion that the easterly boundary of the LaTouf property is, in fact, the Crooked River. Further, based upon the Court's review of the deeds forming the chain of title and the credible testimony before it, the Court concludes that this boundary was established as of March 15, 2021, the date the Corrective Deed was executed. (Pl. Ex. 31.) The Court therefore declares that the eastern boundary of the LaToufs' property is the "thread of the Crooked River," as stated in the Corrective Deed (Exhibit 1) and as depicted on the Dostie Plan (Exhibit 2).

## II.    Common Law Trespass (Count II)

Count II of the Amended Complaint alleges that Mr. Barnard's entry upon the LaToufs' land between 2015 and the filing of the Complaint amounts to common law trespass. A person is liable for common law trespass "if he intentionally enters land in the possession of the other, or causes a thing or a third person to do so." *Medeika v. Watts*, 2008 ME 163, ¶ 5, 957 A.2d 980 (quoting Restatement (Second) of Torts § 158 (1965)). To establish that a party is liable for trespass, the plaintiff must prove both intent and unprivileged interference with his right to possession of his property. *See id.*; Restatement (Second) of Torts § 10 (defining privilege) and 158 (intentional intrusions) (Am. L. Inst. 1965).

The LaToufs have proven their claim of common law trespass. They were in constructive possession of the disputed sliver of land prior to 2021 and have been in actual possession of the parcel since Ellis Realty Trust deeded it to them in March of 2021. *See* Restatement (Second) of

7

Torts § 157 (defining when a person is "in possession" of property).[3]  Mr. Barnard also openly admitted that he intentionally crossed the Crooked River and entered onto the disputed parcel many times over the years to engage in various activities, including but not limited to cutting firewood, snowmobiling, erecting no trespass signs, and constructing a shack.  At no time did the Latoufs grant Mr. Barnard permission to enter the disputed parcel.  Further, his mistaken belief that he was the owner of the property is not a defense to the LaToufs' trespass claim.  Restatement (Second) of Torts § 164(a).

The LaToufs neither presented evidence of actual damages, nor are damages an essential element of a common law trespass claim.  *Medeika*, 2008 ME 163, ¶ 5, 957 A2d 980.  They may recover nominal damages for the "legal injury to [their] real property right," however.  *Gaffney v Reid*, 628 A.2d 155, 158 (Me. 1993); *see also Baker v. Farrand*, 2011 ME 91, ¶ 11 n.3, 26 A.3d 806 (noting that "[n]ominal damages are recoverable for a violation of a plaintiff's legal right—that is, an "injury"—when that injury is not accompanied by actual loss or harm, or when the extent of the loss or harm is not proven" and identifying common law trespass as an example of a claim for which nominal damages are available).

Accordingly, in light of the foregoing, the Court finds the Defendant liable for common law trespass and awards nominal damages to the Plaintiffs in the amount of $1.

---

[3] The Restatement defines a person "in possession" to include only a person who:

(a)  is in occupancy of land with intent to control it, or

(b)  has been but no longer is in occupancy of land with intent to control it, if, after he has ceased his occupancy without abandoning the land, no other person has obtained possession as stated in Clause (a), or

(c)  has the right as against all persons to immediate occupancy of land, if no other person is in possession as stated in Clauses (a) and (b).

Restatement (Second) of Torts § 157.

## III. Statutory Trespass and Injury to Land (Counts III and IV)

Counts III and IV of the Amended Complaint seek damages for Mr. Barnard's statutory trespass and injury to land pursuant to 14 M.R.S. §§ 7551-B[4] and 7552.[5] These statutory claims are narrower than common law trespass. *McLaughlin v. Maine*, 2017 ME 232, ¶ 10, 175 A.3d 657. An important distinction is that the statutory claims may not be premised upon a claim of constructive possession; rather, the statutes require actual ownership of the land. *Compare* 14 M.R.S. § 7551-B(1) ("intentionally enters the land of another"), *and id.* § 7552 (a person may not take certain actions "[w]ithout permission of the owner"), *with Medeika*, 2008 ME 163, ¶ 5, 957 A.2d 980 ("intentionally enters land in the possession of the other"). *See also Ogden v. Labonville*, 2020 ME 133, ¶ 18 n.12, 242 A.3d 177 (affirming grant of summary judgment as to claims based upon 14 M.R.S. §§ 7551-B and 7552 because the plaintiff did not own the disputed property).

---

[4] 14 M.R.S. § 7551-B provides, in relevant part:

> 1. Prohibition. A person who intentionally enters the land of another without permission and causes damage to property is liable to the owner in a civil action if the person:
>
> > A. Damages or throws down any fence, bar or gate; leaves a gate open; breaks glass; damages any road, drainage ditch, culvert, bridge, sign or paint marking; or does other damage to any structure on property not that person's own; or
> >
> > B. Throws, drops, deposits, discards, dumps or otherwise disposes of litter, as defined in Title 17, section 2263, subsection 2, in any manner or amount, on property not that person's own.

*Id.* § 7551-B(1)(A)-(B).

[5] 14 M.R.S. § 7552 provides that "[w]ithout the permission of the owner a person may not:

> A. Cut down, destroy, damage or carry away any forest product, ornamental or fruit tree, agricultural product, stones, gravel, ore, goods or property of any kind from land not that person's own; or
>
> . . .
>
> C. Disturb, remove or destroy any lawfully established transit point, reference point, stake, plug, hub, guardstake, bench pipe, pipe, iron, concrete post, stone post or other monument of any railroad, highway, public utility or other engineering location or survey or any such monument marking the bounds of public or private property.

*Id.* § 7552(2)(A), (C).

9

Also, unlike common law trespass, a plaintiff must prove actual damages. *See Medeika*, 2008 ME 163, ¶ 6, 957 A.2d 980.

Mr. Barnard's entries upon the sliver of land west of the Crooked River prior to March 15, 2021, were not statutory trespasses in violation of 14 M.R.S. § 7551-B because the LaToufs did not own the disputed property at that time. His entry on March 16, 2021, to remove the game cameras occurred after Ellis Realty Trust executed the Corrective Deed, however, and may form the basis for the LaToufs' statutory trespass claim. Despite this entry, the Court concludes that the Plaintiffs have failed to prove statutory trespass under 14 M.R.S. § 7551-B because they did not present any evidence of actual damages resulting from that entry. The Court therefore enters judgment for Mr. Barnard on Count III of the Amended Complaint.

Likewise, the Plaintiffs did not prove their claim of injury to land pursuant to 14 M.R.S. § 7552. (Amended Compl. ¶ 48.) There is no evidence that Mr. Barnard engaged in the "unauthorized destruction of trees and plants" on March 16, 2021, his one entry on the LaToufs' property prior to the filing of the Complaint. The Court therefore also enters judgment for Mr. Barnard on Count IV of the Amended Complaint.

## IV.     NUISANCE (Count V)

Count V of the Amended Complaint alleges that Mr. Barnard's actions constituted a nuisance and seeks damages pursuant to 17 M.R.S. § 2701. To prevail on a claim under Section 2701, a plaintiff must prove "(1) that he was 'injured in his comfort, property, or the enjoyment of his estate,' (2) 'by a common and public or a private nuisance.'" *Johnston v. Me. Energy Recovery Co., Ltd. P'ship*, 2010 ME 52, ¶ 14, 997 A.2d 741 (quoting 17 M.R.S. § 2701). The LaToufs may meet the private nuisance component by showing that Mr. Barnard's conduct meets the definition of a common law nuisance or is listed as a private nuisance in 17 M.R.S. § 2802.

10

There is no evidence of activity that meets the definition of a private nuisance as set forth in 17 M.R.S. § 2802.[6] Whether the LaToufs may prevail on their claim therefore depends upon whether the activity meets the common law definition of private nuisance. The elements of a private claim of nuisance are:

> (1) The defendant acted with the intent of interfering with the use and enjoyment of the land by those entitled to that use;
>
> (2) There was some interference with the use and enjoyment of the land of the kind intended, although the amount and extent of that interference may not have been anticipated or intended;
>
> (3) The interference that resulted and the physical harm, if any, from that interference proved to be substantial[. . . .] The substantial interference requirement is to satisfy the need for a showing that the land is reduced in value because of the defendant's conduct;
>
> (4) The interference that came about under such circumstances was of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land . . . .

*Charlton v. Town of Oxford*, 2001 ME 104, ¶ 36, 774 A.2d 366 (quoting W. Page Keeton et

---

[6] That section provides:

> The erection, continuance or use of any building or place for the exercise of a trade, employment or manufacture that, by noxious exhalations, offensive smells or other annoyances, becomes injurious and dangerous to the health, comfort or property of individuals or of the public; causing or permitting abandoned wells or tin mining shafts to remain unfilled or uncovered to the injury or prejudice of others; causing or suffering any offal, filth or noisome substance to collect or to remain in any place to the prejudice of others; obstructing or impeding, without legal authority, the passage of any navigable river, harbor or collection of water; corrupting or rendering unwholesome or impure the water of a river, stream, pond or aquifer; imprudent operation of a watercraft as defined in Title 12, section 13068-A, subsection 8; unlawfully diverting the water of a river, stream, pond or aquifer from its natural course or state to the injury or prejudice of others; and the obstructing or encumbering by fences, buildings or otherwise of highways, private ways, streets, alleys, commons, common landing places or burying grounds are nuisances within the limitations and exceptions mentioned. Any places where one or more old, discarded, worn-out or junked motor vehicles as defined in Title 29-A, section 101, subsection 42, or parts thereof, are gathered together, kept, deposited or allowed to accumulate, in such manner or in such location or situation either within or without the limits of any highway, as to be unsightly, detracting from the natural scenery or injurious to the comfort and happiness of individuals and the public, and injurious to property rights, are public nuisances.

17 M.R.S. § 2802.

11

al., *Prosser and Keeton on the Law of Torts* § 87 at 622-23 (5th ed. 1984)); *accord West v. Jewett & Noonan Transp., Inc.*, 2018 ME 98, ¶ 14, 189 A.3d 277.

The LaToufs have failed to satisfy their claim of nuisance. Although Mr. Barnard engaged in actions that intentionally interfered with the LaToufs' use and enjoyment of the property, there is no evidence before the Court that the LaToufs' property diminished in value as a result of Mr. Barnard's conduct. As the Plaintiffs failed to satisfy the third element of a nuisance claim, the Court enters judgment for Mr. Barnard on Count V of the Amended Complaint.

## V. INJUNCTIVE RELIEF (Count VI)

The LaToufs seek to "permanently enjoin Mr. Barnard from entering the LaTouf Property, including but not limited to any of the land west of the Crooked River and abutting the Barnard Property" and require Mr. Barnard to "remove all items and materials he has brought onto the LaTouf Property, including but not limited to any structures, vehicles, signs, tape, lumber, construction waste, and/or other personal property or trash." (Amended Compl. ¶¶ 59-60.)

A party seeking a permanent injunction bears the burden of demonstrating that (1) the movant will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm that granting the injunctive relief would inflict on the other party; (3) the movant has a likelihood of success on the merits; and (4) the public interest will not be adversely affected if an injunction is granted. *Bangor Historic Track, Inc. v. Dep't of Agric.*, 2003 ME 140, ¶ 9, 837 A.2d 129. These factors are not considered in isolation; rather, the Court is to "weigh all of these factors together in determining whether injunctive relief is proper in the specific circumstances of each case." *Dep't of Env't Prot. v. Emerson*, 563 A.2d 762, 768 (Me. 1989).

The Court has considered each of the four factors necessary to grant injunctive relief. In light of the standard, and the facts found above, the Court concludes that the LaToufs are entitled

12

to the requested injunctive relief. Imposition of the requested relief is particularly important due to the irreparable injury that will be suffered by the Plaintiffs absent an injunction in light of Mr. Barnard's past treatment of the disputed property and his continued to attempt to interfere with the LaToufs' property rights, even after entry of the Temporary Restraining Order.

## VI.    CONTEMPT SANCTIONS

The Court previously held Mr. Barnard in contempt for violating the TRO by trimming vegetation on land located west of the Crooked River, but took the imposition of sanctions under advisement. Contempt Order at 5, 7. Maine Rule of Civil Procedure 66 permits the Court to "enter judgment in favor of the person aggrieved for a sum of money sufficient to indemnify the aggrieved party and to satisfy the costs and disbursements, including reasonable attorney fees, of the aggrieved party" if "loss or injury to a party in an action or proceeding has been caused by the contempt." M.R. Civ. P. 66(d)(3)(C).

Although the Contempt Order placed the issue of sanctions squarely on the table at the final hearing, the Plaintiffs did not present any evidence of loss or injury resulting from the contempt, including but not limited to any testimony regarding the attorney fees incurred as a result of the contempt or an attorney fee affidavit. The Court therefore declines to impose a sanction for the Defendant's contempt.

## VII.   CONCLUSION AND JUDGMENT

In accordance with the foregoing, it is hereby adjudged and ordered as follows:

1. Plaintiffs' request for a Declaratory Judgment (Count I) is granted. The Court declares that the eastern boundary of the LaToufs' property is the thread of the Crooked River, as stated in the Corrective Deed of Release by Trustee (Exhibit 1) and as depicted on the Plan of Boundary Survey (Exhibit 2). The following provisions are set forth pursuant to 14 M.R.S. § 2401:

    a. Names and addresses of all parties to the action, including counsel of record:

13

| Name and Address of Party: | Name and Address of Counsel: |
|---|---|
| W. Gregory LaTouf 11 Sylvan Rd. Beverly, MA 01915 Thomas C. LaTouf 101 Winthrop St. Framingham, MA 01915 *Plaintiffs* | Joseph G. Talbot, Esq. Emily Arvizu, Esq. Perkins Thompson, P.A. One Canal Plaza, P.O. Box 426 Portland, ME 04112-0426 *Plaintiffs' Counsel* |
| Richard Barnard 1121 Songo Pond Rd. Albany Township, ME 04217 *Defendant* | None entered |

b. The docket number is SOPSC-CV-2021-0021.

c. The Court finds that all parties have received notice of the proceedings in accordance with the applicable provisions of the Maine Rules of Civil Procedure.

d. The real estate involved is described in the legal description to the Corrective Deed of Release by Trustee, which was recorded on March 16, 2021, in the Oxford County Registry of Deeds in Book 5591, Page 553, and which is attached hereto as Exhibit 1. The LaToufs' property is depicted on the Plan of Boundary Survey attached hereto as Exhibit 2.

e. Plaintiffs are responsible for recording the attested copy of the judgment and for paying the appropriate recording fees upon entry of a final judgment in this action.

2. Judgment is entered in favor of the Plaintiffs and against the Defendant on Count II of the Amended Complaint (common law trespass) in the amount of $1, plus costs.

3. Judgment is entered in favor of the Defendant and against the Plaintiffs on Counts III, IV, and V (statutory trespass, injury to land, and nuisance) of the Amended Complaint.

4. Judgment is entered in favor of the Plaintiffs and against the Defendant on Count VI of the Amended Complaint. The Court further orders:

a. With the exception of any entry necessary to comply with Paragraph 4(b) below, Defendant Richard Barnard is permanently enjoined from entering property owned by Plaintiffs W. Gregory LaTouf and Thomas C. LaTouf, including but not limited to any of the land west of the Crooked River and abutting the Defendant's property in Albany Township, Maine.

14

b. Defendant Richard Barnard shall remove all items and materials that he has brought onto the Plaintiffs' property, including but not limited to any structures, vehicles, signs, tape, lumber, construction waste, and/or other personal property or trash, within thirty (30) days of the date of this judgment. Defendant shall provide 24 hours' advance written notice to counsel for the LaToufs of any intended entry onto the LaToufs' property for purposes of complying with this paragraph.

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Decision and Judgment on the civil docket by a notation incorporating it by reference.

Date:   June 14, 2023

_____
Jennifer A. Archer
Justice, Maine Superior Court

## CERTIFICATE OF CLERK

The final judgment in this case (docket no. SOPSC-CV-2021-0021) was entered on the docket on _____, 2023.

I hereby certify that:

____ the applicable appeal period has expired without action.

____ the final judgment has been entered after remand following appeal.

Date:   _____, 2023

_____
Clerk, Maine Superior Court

Printed Name: _____

15

Receipt # 200526

ERECORD

Instr # 4030
Cherri L Crockett Register of Deeds    OXFORD COUNTY

Bk 5591    PG 553
03/16/2021 02:51:24 PM
Pages 2
DEED

## CORRECTIVE
## DEED OF RELEASE BY TRUSTEE

KNOW ALL BY THESE PRESENTS, that I, JAMES A. PERRY, TRUSTEE OF THE ELLIS REALTY TRUST U/T/D MARCH 5, 1974 and recorded in the Oxford County Registry of Deeds in Book 828, Page 294, by the power conferred by law, and every other power, for consideration paid, RELEASE to W. GREGORY LATOUF, whose mailing address is 11 Sylvan Road, Beverly, MA 01915 and THOMAS C. LATOUF, whose mailing address is 101 Winthrop Street, Framingham, MA 01915, as joint tenants, certain real estate located in the Township of Albany, County of Oxford, and State of Maine, which is more particularly described in Exhibit A attached hereto and made a part hereof.

James A. Perry, as Trustee of the aforesaid Trust, does hereby covenant with the said grantees, their heirs and assigns, that he is the sole Trustee under said Trust; that said Trust is still in force and effect; that he has the power thereunder to convey as aforesaid; and that in making this conveyance, he has, in all respects, acted pursuant to and in accordance with the authority vested in and granted to him therein and all terms and conditions of said Trust.

This Corrective Deed is being given to correct errors in the legal description in the deed of James A. Perry, Trustee of the Ellis Realty Trust, to Robert W. Bond, Jr., and Helen C. Bond dated April 25, 1984, and recorded in the Oxford County Registry of Deeds in Book 1255, Page 129. Grantees are the successors in interest to Robert W. Bond, Jr., and Helen C. Bond.

This conveyance is made SUBJECT, HOWEVER, to real estate taxes which are not yet due and payable, which, by acceptance hereof, Grantee assumes and agrees to pay.

WITNESS my hand and seal this _15th_ day of March, 2021.

_____        _____
Witness                              James A. Perry, Trustee of the Ellis Realty
                                     Trust

COMMONWEALTH OF MASSACHUSETTS
County of _Middlesex_____, SS.                    March _15_, 2021

Then personally appeared the above-named James A. Perry, Trustee of the Ellis Realty Trust and acknowledged the foregoing instrument to be his free act and deed in his said capacity.

Before me,

_____
Notary Public
Printed Name: _Edward A Supple_
My Commission Expires: _11 /28/ 2025_

EDWARD A. SUPPLE, III
Notary Public
Commonwealth of Massachusetts
My Commission Expires
November 28, 2025

EXHIBIT
1

BK: 5591 PG: 553

## Exhibit A
Legal Description

A certain lot or parcel of land situated in the Township of Albany, County of Oxford, and State of Maine, being all the same remaining from property conveyed by P. H. Chadbourne & Co. to Ellis Realty Trust by instrument dated December 22, 1982, and recorded in the Oxford County Registry of Deeds in Book 1188, Page 58, said remaining property being bounded on the north by land now or formerly of Bennett by instrument recorded in said Registry of Deeds in Book 1202, Page 134; on the east by the thread of the Crooked River; on the south by land now or formerly of Francis by instrument recorded in said Registry of Deeds in Book 1203, Page 131; and on the west by property conveyed to the Grantees herein by deed from Glen Allen, *et al.,* dated October 28, 2011, and recorded in said Registry of Deeds in Book 4777, Page 238.

*State of Maine*    DATE _10/19/22_
*Oxford, ss.*

I HEREBY ATTEST THAT THIS IS A
TRUE COPY OF RECORD.

BOOK _5591_ PAGE _553 + 554_

*Chris L Crocker*
Register of Deeds, Oxford County

BK: 5591 PG: 554



PLAN OF BOUNDARY SURVEY
OF PROPERTY OWNED BY
W. GREGORY LATOUR
LOCATED AT
OFF MANKO ROAD
WEST OF THE CROOKED RIVER
ALBANY TOWNSHIP, OXFORD COUNTY, MAINE

EXHIBIT
2

PENGAD 800-631-6989

STATE OF MAINE
OXFORD, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV 21-21

GREGORY LATOUF

v.

*EX PARTE* TEMPORARY
RESTRAINING ORDER

RICHARD BARNARD

Before the Court is Plaintiff's Motion for an *ex parte* Temporary Restraining Order. For the following reasons, Plaintiff's Motion is granted in part and denied in part.

**Facts**

The Plaintiff, W. Gregory Latouf, owns approximately forty acres of wooded property in Alfred, Maine. Plaintiff and his family currently utilize the property for recreation. However, the Plaintiff plans to eventually establish a permanent residence on the parcel. The Plaintiff has submitted surveys, deeds, and other evidence that tends to show that the eastern boundary of Plaintiff's property is situated along the Crooked River. This evidence includes: (1) a recorded "Corrective Deed of Release by Trustee" intended to "correct errors in the legal description" of Plaintiff's original deed and showing the Plaintiff's property "being bounded . . . on the east by the thread of the Crooked river[;]" (2) a "Plan of Boundary Survey" reflecting the recorded Corrective Deed; and (3) descriptions, sketches, and deeds prepared for an easement over the Plaintiff's property prepared in 1941. (LaTouf Aff., Exhibits B-E.)

The Defendant, Richard Barnard, acquired property situated to the west of the Plaintiff's, with a common boundary along the Crooked River. Upon acquiring the property, the Defendant represented to the Plaintiff that Defendant owned a portion of

1

the property west of the Crooked River. The Defendant proceeded to utilize the property west of the Crooked River for Defendant's own use, including clearing trees and vegetation, and leaving personal property within the disputed boundary. In response, Plaintiff's counsel sent a letter to Defendant in February 2021, exerting Plaintiff's ownership of the disputed property and warned of pending litigation. Plaintiff alleges that the Defendant has increased his development of the land since receipt of the letter, including increased placing of personal items and further tree clearing. The Plaintiff also reports that the game cameras placed by him on the disputed property are no longer reporting images.

Plaintiff has since filed this suit and presently requests that the court enter a temporary restraining order, *ex parte*, to: (1) restrain the Defendant, or anyone acting on his behalf, from entering the land situated west of the Crooked River; (2) restrain the Defendant, or anyone acting on his behalf, from removing trees or otherwise affecting the land situated west of the Crooked River; and (3) order the Defendant to remove all items and materials Defendant has brought onto the disputed property.

**Legal Standard**

A court may grant a temporary restraining order if it concludes the following criteria are met: (1) the plaintiff will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting the injunctive relief will inflict on the Defendant; (3) the plaintiff has a likelihood of success on the merits: and (4) the public interest will not be adversely affected by granting the injunction. *Bangor Historic Track, Inc. v. Dep't of Agriculture*, 2003 ME 140, ¶ 9, 837 A.2d 129. "Failure to demonstrate that any one of these criteria are met requires that injunctive relief be denied." *Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res.*, 2003 ME 140, ¶10 837 A.2d 129 (citation omitted).

2

## Discussion

### A. Irreparable Injury

An irreparable injury is one for which there is no adequate remedy at law. *See Bar Harbor Banking & Trust Co. v. Alexander*, 411 A.2d 74, 79 (Me. 1980). "[A]n appropriation of the land of another, constituting a permanent injury to and depreciation of the property, is an irreparable injury owing to the uncertainty of the measure of damages." *Charles C. Wilson & Son v. Harrisburg*, 77 A. 787, 791 (1910).

Here, the Plaintiff's request for a TRO contemplates an irreparable injury to land that has long been recognized as proper grounds for an injunction. The Plaintiff alleges fee ownership over the disputed property, which, if ultimately proven, would render the Defendant's occupation of that land a continuing trespass. "The inconvenience and annoyance from repeated trespasses . . . which interfere[s] with the free use and enjoyment of real property, justify the interference of a court of equity to prevent their continual repetition[.] *Wilson & Son*, 77 A. at 792 (citation and quotations omitted). Accordingly, the court finds that the continuing trespass alleged constitutes an irreparable injury for which there is no adequate remedy at law.

### B. Balance of Injury

Based on the record presented, the court finds that the threatened irreparable injury to the Plaintiff outweighs any harm that will befall the Defendant if this TRO is granted. Indeed, the purpose of this TRO is to maintain the status quo during the pendency of this litigation. If the Defendant prevails in the underlying lawsuit, he will be permitted to continue developing the land as he sees fit. Conversely however, the harm to the Plaintiff's free use and enjoyment of property cannot be properly remedied in the absence of court intervention. Again, the interest in protecting the free use of property dictates that the balance of harm weigh in favour maintaining the status quo.

3

Accordingly, the threatened injury to the Plaintiff outweighs any harm that will befall the Defendant if he is prevented from entering or developing the disputed land.

The ability to seek a modification or dissolution of this TRO if the Defendant can properly contradict the boundary claim further reduces the burden on the Defendant. *See* M.R. Civ. P. 65(a). The Defendant also remains able to present evidence to the court showing that the harm resulting from this TRO outweighs the harms prevented by maintaining a status quo.

### C. Likelihood of Success on the Merits

The success on the merits critera requires a showing that success is reasonably likely. *See e.g. Bangor Historic Track Inc.*, 2003 ME 140, ¶ 9, 837 A.2d 129; *Department of Environmental Protection v. Emerson*, 563 A.2d 762, 167-68 (Me. 1989). Here, the Plaintiff has shown through recorded deeds and surveys that he, at a minimum, has a reasonable likelihood of establishing ownership over the disputed property. The court is also particularly persuaded by the fact that this TRO seeks only to maintain the status quo. *See Emerson*, 563 A.2d at 768. Accordingly, the court finds that the Plaintiff has shown, at this stage, that he is reasonably likely to succeed on the merits of his claim, particularly in light of the present status quo.

### D. Public Interest

The court finds that the public interest will not be adversely affected by granting this TRO. This action involves private parties and their conduct with respect to private land. There is nothing to suggest that this TRO will have any external public impact. Accordingly, the public interest will not be harmed by granting this TRO.

### E. Ex Parte

4

In addition to the TRO criteria outline above, a TRO requested *ex parte* must also establish that the irreparable injury will be immediate and that notice to the Defendant should otherwise not be required. *See* M.R. Civ. P. 65(a).

Here, the *ex parte* request is based on a corroborated concern that the Defendant will further damage or act to claim ownership of the subject property if given notice of pending court action. The Plaintiff has presented evidence that the Defendant was notified of this pending litigation via Plaintiff's legal counsel. The Plaintiff has also presented evidence that the Defendant escalated his irreparable development of the disputed property in the weeks following receipt of the letter. This TRO seeks only to maintain the status quo during the pendency of this litigation. Accordingly, the court finds that there is sufficient evidence to show that the irreparable injury suffered by the Plaintiff will be immediate if the TRO is not granted *ex parte*. Moreover, the Defendant was notified that further development of the land would result in litigation and thus notice to the Defendant is not required under the circumstances; particularly because the TRO only serves to prevent further development or injury.

**Conclusion**

The Plaintiffs' Motion for a Temporary Restraining Order is GRANTED in part and DENIED in part. This TRO is granted for the limited purpose of maintaining the status quo of the parcel, and preventing further irreparable alterations to its natural composition. However, ordering the Defendant to remove specific personal property does not serve to maintain the status quo. Accordingly, the court orders as follows:

1. The Defendant, or anyone acting on behalf of the Defendant, is prohibited from entering onto any property situated west of the Crooked River.

2. The Defendant shall have fourteen (14) days from the entry of this order in which he *will* be permitted enter onto the land west of the Crooked River *for the limited*

5

*purpose of removing personal property belonging to the Defendant.* Such personal property is limited only to property left on the land by the Defendant. However, the Defendant is under no obligation to remove property from the land by virtue of this Order.

3. The Defendant, or anyone acting on behalf of the Defendant, is prohibited from removing, altering, or otherwise disturbing the current status of the land situated west of the Crooked River, including trees, vegetation, or any other natural feature.

4. The Defendant, or anyone acting on behalf of the Defendant, is prohibited from placing any additional items on the land west of the Crooked River.

5. The Defendant, or anyone acting on behalf of the Defendant, is prohibited from removing any items belonging to the Plaintiff which are found on the property west of the Crooked River, including game cameras.

6. The Plaintiff, or anyone acting on behalf of the Plaintiff, is prohibited from placing any personal property on the land west of the Crooked river.

Unless otherwise modified by this court, this Order shall remain in effect throughout the pendency of this litigation.

To the extent Plaintiff seeks any additional relief, the Motion is DENIED. Additionally, the Plaintiff's request that the Defendant be ordered to remove the property located in the disputed area is also DENIED.

This Order is incorporated on the docket by reference pursuant to M.R.Civ.P. 79(a).

DATE: _Apr. 12, 2021_          _____
                               Thomas R. McKeon
                               Justice, Maine Superior Court

6